JS 44 CAND (Rev. 12/11)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
CASCADES COMPUTER INNOVATION LLC

**(b)** County of Residence of First Listed Plaintiff **Cook County**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Martin L. Fineman (State Bar No. 104413)
Davis Wright Tremaine LLP
505 Montgomery St., #800, San Francisco, CA 94111
Tel: 415/276-6500 E-Mail: martinfineman@dwt.com

### DEFENDANTS
RPX CORPORATION, HTC CORPORATION, LG ELECTRONICS, INC., MOTOROLA MOBILITY HOLDINGS, INC., SAMSUNG ELECTRONICS CO. LTD., DELL, INC.

County of Residence of First Listed Defendant **San Francisco**
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☒ 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical | | | ☒ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Personal Injury Product Liability | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Mgmt. Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Med. Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | ☐ 510 Motions to Vacate Sentence | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | **Habeas Corpus:** | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 530 General | **IMMIGRATION** | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 535 Death Penalty | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 463 Habeas Corpus - Alien Detainee (Prisoner Petition) | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district *(specify)* ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
15 U.S.C. §§ 15 and 26; 28 U.S.C. § 1331
Brief description of cause:
violation of federal antitrust laws, violation of Cartwright Act and California unfair competition law

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
**DEMAND $**
CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____ DOCKET NUMBER _____

## IX. DIVISIONAL ASSIGNMENT (Civil L.R. 3-2)
*(Place an "X" in One Box Only)*
☒ SAN FRANCISCO/OAKLAND ☐ SAN JOSE ☐ EUREKA

March 6, 2012
DATE

Martin L. Fineman
SIGNATURE OF ATTORNEY OF RECORD

1  MARTIN L. FINEMAN, Bar No. 104413
   DAVIS WRIGHT TREMAINE LLP
2  505 Montgomery Street
   Suite 800
3  San Francisco, CA 94111
   Telephone: (415) 276-6575
4  Facsimile: (415) 276-6599
   Email: martinfineman@dwt.com
5
   NIRO, HALLER & NIRO
6  Raymond P. Niro (Member of the N.D. Cal. Bar)
   Daniel R. Ferri (*Pro Hac Vice Application forthcoming*)
7  Gabriel I. Opatken (*Pro Hac Vice Application forthcoming*)
   Ashley LaValley (*Pro Hac Vice Application forthcoming*)
8  181 West Madison, Suite 4600
   Chicago, IL 60602-4515
9  Phone: (312) 236-0733
   Fax: (312) 236-3137
10 E-mail: rniro@nshn.com
   E-mail: dferri@nshn.com
11 E-mail: gopatken@nshn.cm
   E-mail: alavalley@nshn.com
12
   Attorneys for Plaintiff
13 Cascades Computer Innovation LLC

14             IN THE UNITED STATES DISTRICT COURT

15           FOR THE NORTHERN DISTRICT OF CALIFORNIA

16
   CASCADES COMPUTER INNOVATION      )
17 LLC,                              )
                                     )
              Plaintiff,             )   Case No. CV 12 1143
18                                   )
        v.                           )
19                                   )   **COMPLAINT AND DEMAND**
   RPX CORPORATION, HTC              )   **FOR JURY TRIAL**
20 CORPORATION, LG ELECTRONICS, INC.,)
   MOTOROLA MOBILITY HOLDINGS,       )
21 INC., SAMSUNG ELECTRONICS CO.     )
   LTD., DELL INC.,                  )
22              Defendants.          )

23

24

25 COMPLAINT AND DEMAND FOR JURY TRIAL                                    - 1 -
   CASCADES COMPUTER INNOVATION LLC v. RPX CORP., ET AL.
   DWT 19170246v1 0085000-009631

1    Plaintiff Cascades Computer Innovation LLC ("Cascades") complains of defendants

2  RPX Corporation, HTC Corporation, LG Electronics, Inc., Motorola Mobility Holdings, Inc.,

3  Samsung Electronics Co. Ltd. And Dell Inc. (collectively, "defendants"), as follows:

### THE PARTIES

5    1.    Cascades is an Illinois limited liability company having its principal place of

6  business at 500 Skokie Boulevard, Suite 250, Northbrook, Illinois 60062. It has the exclusive

7  right to license and enforce a portfolio of 38 patents owned by Elbrus International Limited and

8  Elbrus Svarog L.P. (collectively, "Elbrus").

9    2.    RPX Corporation is a Delaware corporation with a principal place of business at

10  One Market Plaza, Steuart Tower, Suite 700, San Francisco, California 94105. Backed by the

11  hugely successful venture capital firm Kleiner, Perkins (early investors in Amazon, Google,

12  Genentech, AOL), RPX is a patent aggregator that acquires patents for its members (now in

13  excess of 110), each of whom is granted a license in exchange for a payment ranging from

14  $60,000 to $6,000,000. To date, RPX has accumulated more than 1,600 patents in various fields,

15  not counting the 29,000 patents for which it recently acquired exclusive licensing rights.

16    3.    HTC Corporation ("HTC") is a foreign corporation with corporate headquarters at

17  23 Xinghua Road, Taoyuan 330, Taiwan. HTC does substantial business in this judicial district

18  including the marketing, sale, offering for sale, and importation of cellular telephone devices

19  which are accused of patent infringement in this case.

20    4.    LG Electronics, Inc. ("LG") is a foreign corporation having a place of business at

21  LG Twin Towers 20, Yeouido dong, Yeongdeungpo-gu, Seoul, Republic of Korea 150-721 with

22  its United States headquarters at 10101 Old Grove Road, San Diego CA 92131. LG does

23  substantial business in this judicial district including the marketing, sale, offering for sale, and

24  importation of cellular telephone devices.

25  COMPLAINT AND DEMAND FOR JURY TRIAL                                                      - 2 -
CASCADES COMPUTER INNOVATION LLC V. RPX CORP., ET AL.
DWT 19170246v1 0085000-009631

1    5.    Motorola Mobility Holdings, Inc. ("Motorola") is a Delaware corporation

2    headquartered at 600 N. U.S. Highway 45, Libertyville, Illinois 60048. Motorola does

3    substantial business in this judicial district including the marketing, sale, offering for sale, and

4    importation of cellular telephone devices.

5    6.    Samsung Electronics Co., Ltd. ("Samsung") is a foreign corporation with

6    corporate headquarters at 250, 2-ga, Taepyung-ro, Jung-gu, Seoul 100-742, Republic of Korea.

7    Samsung does substantial business in this judicial district including the marketing, sale, offering

8    for sale, and importation of cellular telephone devices and tablet computers.

9    7.    Dell Inc. ("Dell") is a Delaware corporation with an office located at 1 Dell Way,

10    Round Rock, Texas. Dell does substantial business in this judicial district including the

11    marketing, sale, offering for sale, and importation of cellular telephone devices.

12    8.    HTC, LG, Motorola, Samsung and Dell manufacture and sell wireless portable

13    communication devices including cellular telephones and computer tablets that employ the

14    Android operating system. Each is a member of RPX, as is Google, the owner of the Android

15    operating system.

16    **JURISDICTION AND VENUE**

17    9.    This Complaint states claims for violation of the federal antitrust laws and for

18    violation of the Cartwright Act and California unfair competition law. This Court has subject

19    matter jurisdiction over the federal antitrust claims under 15 U.S.C. §§ 15 and 26 and 28 U.S.C.

20    § 1331. This Court has supplemental jurisdiction over Cascades' California state law claims

21    under 28 U.S.C. § 1367 because those claims are so related to the federal claims that they form

22    part of the same case or controversy.

23    10.    At all times relevant to this claim defendants have engaged in and affected

24    interstate commerce and foreign import commerce and have affected United States export

25    COMPLAINT AND DEMAND FOR JURY TRIAL                                                          - 3 -
     CASCADES COMPUTER INNOVATION LLC V. RPX CORP., ET AL.
     DWT 19170246v1 0085000-009631

1    commerce all within the meaning of the Sherman Act (15 U.S.C. §§ 1, 2 and 6(a)).

2        11.    The violations of law described in this Complaint have been and are being carried

3    out in the United States and in this judicial district. Venue in this judicial district is proper under

4    15 U.S.C. §§ 15 and 22 and 28 U.S.C. §§ 1391(c) and (d).

5                                **Cascades and Elbrus**

6        12.    After 40 years with the Russian government's Institute of Precision Mechanics

7    and Computer Technology (where he led the development of the Elbrus supercomputers

8    underpinning the Russian space mission control center), the lead inventor of the Cascades/Elbrus

9    patents, Boris Babaian, turned his focus to private industry. As chairman and chief technologist

10   of Elbrus International, he (and the same team that developed three generations of

11   supercomputers) developed pioneering software technology like that covered, for example, by

12   United States Patent No. 7,065,750, entitled "Method and Apparatus for Preserving Precise

13   Exceptions in Binary Translated Code," issued June 20, 2006 (the "'750 patent"). Mr. Babaian is

14   an Intel Fellow and the chairman and chief technologist of Elbrus International and oversees a

15   design team that traces its roots to the days of Sputnik, the Soviet space satellite often cited as

16   the catalyst for the scientific research that led to many Western technological innovations, such

17   as the Internet. As noted above, Cascades acquired the exclusive right to license and enforce

18   more than 35 Elbrus patents, including the '750 patent: 5,418,975, 5,781,924, 5,794,029,

19   5,889,985, 5,923,871, 5,958,048, 5,983,336, 6,243,822, 6,265,896, 6,301,706, 6,313,691,

20   6,320,446, 6,323,688, 6,351,155, 6,363,405, 6,366,130, 6,373,149, 6,412,105, 6,424,181,

21   6,516,462, 6,516,463, 6,526,573, 6,549,903, 6,560,775, 6,564,372, 6,567,831, 6,584,611,

22   6,594,824, 6,668,316, 6,718,541, 6,732,220, 6,751,645, 6,820,255, 6,954,927, 7,003,650,

23   7,065,750, 7,069,412, 7,143,401. Elbrus granted a license to Intel under its patents for a

24   substantial lump-sum payment. Various of these patents are infringed by the manufacturing

25   COMPLAINT AND DEMAND FOR JURY TRIAL                                                    - 4 -
     CASCADES COMPUTER INNOVATION LLC v. RPX CORP., ET AL.
     DWT 19170246v1 0085000-009631

1  defendants and all are subject to the group boycott and concerted refusal to deal complained of
2  herein.

3                    **The Cascades Patents And Google's Android Operating Systems**

4         13.    Google's Android operating system has become the dominant mobile operating

5  system in the world, achieving a 40% market share. The manufacturing defendants dominate the

6  Android market in the United States as device suppliers that use the Android operating systems

7  (HTC (41%), Motorola (35%), Samsung (17%) and LG (4%)). Dell has a market share below

8  4% but, together with the other manufacturing defendants, sells more than 90% of all cellular

9  phones sold in the United States that use the Android operating systems. More than 300,000

10  applications are available for use on Android devices. An operating system of some kind is

11  installed on more than 130 million devices and more than 10 billion applications are downloaded

12  on those devices each year. Only devices that meet Google's compatibility requirements can

13  install such applications on Android-based phones and tablets. The technology of the '750

14  patent, and others in the Cascades portfolio, facilitates the installation and use of such

15  applications on Android devices (such as smart phones), through dependency trees, which

16  permits the optimization of the bytes code used in an application, thus, increasing the speed and

17  value of the application. The '750 patent covers such optimization techniques.

18         14.    Defendant Motorola owns more than 17,000 patents in the area of mobile phone

19  technology, making it one of the dominant patent holders in the mobile telephone market.

20  Google has agreed to acquire Motorola for $12.5 billion to gain control of its patent portfolio.

21  Together with the other defendants, Motorola (and Google) and RPX own or control many of the

22  patents of significance for mobile phone technology. The number of U.S. patents owned or now

23  controlled by each defendant is approximately: Google/Motorola, 22,046; Samsung, 47,348;

24  LG, 16,823, HTC, 222; Dell, 2,461; and RPX, 1,600. Recently, RPX became an agent for

25  COMPLAINT AND DEMAND FOR JURY TRIAL                                                      - 5 -
   CASCADES COMPUTER INNOVATION LLC V. RPX CORP., ET AL.
   DWT 19170246v1 0085000-009631

1   licensing Alcatel-Lucent's portfolio of 29,000 issued United States patents, allowing it to

2   effectively control the licensing of those patents as well. Together the defendants own or control

3   nearly 120,000 U.S. patents. Cascades owns or controls less than 100.

4                        **The Anti-Troll/Anti-NPE Conspiracy**

5         15.    The term "patent troll" was created in 2002 by Peter Detkin, then head of

6   litigation for Intel Corporation. "Trolling for Dollars," The Recorder, Sandburg, B. (July 30,

7   2001) (Exhibit A). Intel had been sued for patent infringement and, later, for defamation for

8   calling its opponent in the then-pending litigation "a patent extortionist." According to Detkin, a

9   patent troll is "somebody who tries to make a lot of money off a patent that they are not

10  practicing and have no intention of practicing and in most cases never practiced.". Detkin is a

11  co-founder of Intellectual Ventures, one of the biggest patent aggregators and (thus, by his own

12  definition) patent trolls in now existence. Intellectual Ventures accumulated more than 30,000

13  patents on the pledge that it was only acquiring patents for defensive purposes. That pledge was

14  quickly broken in a string of high-profile patent infringement cases Intellectual Ventures brought

15  in Delaware.

16        16.    The troll label has been extended to non-manufacturing entities (called "NPEs")

17  who are companies like Cascades that do not manufacture or sell products covered by patents

18  they own or control. Of course, each of the defendants also owns or controls numerous patents

19  that cover products they neither manufacture nor sell.

20        17.    RPX is a spin-off of Intellectual Ventures and was originally backed by three

21  venture capital firms, including Kleiner Perkins. RPX's stated goal is to protect its members

22  from patent infringement claims from NPEs. In most cases, like in this case, an inventor turns to

23  an NPE for financial or strategic assistance in asserting his or her patent rights, since inventors

24  oftentimes lack the financial wherewithal or experience to do so themselves. Thus, if an inventor

1  like Mr. Babaian cannot afford the extraordinary expense of patent enforcement (commonly, $3

2  million to $8 million per litigation through trial) or is not knowledgeable about how patent

3  licensing and enforcement works in this country, he or she must turn to a company like Cascades

4  to provide financial and other support to license the patents.  As in this case, the companies that

5  infringe an inventor's patents are frequently large multinational companies with vast resources to

6  devote to the defense of any patent claims, regardless of merit.  Cascades and other NPE

7  companies try to level the playing field on which the large corporations and the individual

8  inventor or small patent holder play, by providing financial and other assistance to make it a

9  more equal contest.

10      18.     Law firms like Winston & Strawn that represent two of the defendants (Motorola

11  and Dell) and others, like Sony-Ericsson who infringe the Cascades patents, have openly

12  encouraged their clients and potential clients not to negotiate settlements, accept licenses or settle

13  independently with NPEs, regardless of the merits (http://wlflegalpulse.com/2010/09/22/web-

14  seminar-makes-case-for-patent-troll-lawsuit-targets-to-fight-back; http://wlflegalpulse.files.

15  wordpress.com/ 2010/09/troll-presentation-5.pdf).

16                              **The RPX Business Model**

17      19.     RPX has more than 110 members, including each of the named manufacturing

18  defendants and other infringers of the '750 patent and various other Cascades patents, including

19  ASUSTEK Computer, Inc., Hynix Semiconductor, Inc., Philips Koninklijke Electronics, N.V.,

20  Sharp Electronics Corp., Sony-Ericsson and Pantech Wireless, Inc., each of which have also

21  been sued for infringement of a Cascades patent.   In 2010, RPX contacted Cascades about the

22  possibility of acquiring license rights in the Elbrus portfolio and made a substantial offer on

23  behalf of its members.

24      20.     RPX frequently acts as the agent or intermediary of its members for purposes of

25  COMPLAINT AND DEMAND FOR JURY TRIAL                                              - 7 -
    CASCADES COMPUTER INNOVATION LLC V. RPX CORP., ET AL.
    DWT 19170246v1 0085000-009631

1  acquiring patents and negotiating licensing and purchase terms on behalf of its members

2  collectively. Funding is provided by members and each can renew its membership periodically

3  by paying additional monies to RPX. Although the contracts RPX has with its members

4  purportedly give members the ability to deal independently in their own self-interest, the whole

5  purpose of RPX and the reason for joining RPX is to form an industry group that can force

6  individual inventors, patent owners and NPEs to deal collectively with RPX as an agent for its

7  members acting in concert with each other, rather than having each member deal separately and

8  independently with the patent holder. RPX selects its members based upon the frequency that

9  they have been sued for patent infringement by NPEs. Currently, RPX has targeted for

10  membership 275 companies that have been sued at least twice by an NPE.

11      21.     On its website, RPX boasts about its ability to force lower prices through

12  coercive, collective action on behalf of its members against NPEs:

13          But even after an NPE has acquired an asset, RPX can help. NPEs acquire
            patents and in the process, take on the significant cost and risk of litigating against
14          a large number of companies. RPX is often able to achieve "wholesale" pricing
            terms, where we can acquire rights for our members at significantly reduced cost
15          relative to what the NPE might charge an individual company on its own. RPX
            believes we have saved our members tens of millions of dollars through these
16          wholesale-priced transactions.

17          Our approach enables our client network to manage patent litigation risks and
            costs through collective defensive patent initiatives, superior patent intelligence,
18          and special advisory services.

19  http://www.rpxcorp.com/index.cfm?pageid=43.

20      22.     RPX also gathers intelligence and data on patent acquisition opportunities, patent

21  litigation and licensing activities and trends, all for the purpose of forcing lower royalty

22  payments for licensing by combining the efforts of its members at the expense of their

23  independent interests.

24      23.     RPX has been accused of using coercive tactics with potential members to force

25  COMPLAINT AND DEMAND FOR JURY TRIAL                                                        - 8 -
    CASCADES COMPUTER INNOVATION LLC V. RPX CORP., ET AL.
    DWT 19170246v1 0085000-009631

1 | them to join RPX. A potential RPX member, Kaspersky Labs, claimed that RPX engaged in

2 | extortive and fraudulent practices by threatening that, if Kaspersky Labs did not join RPX, it

3 | could face lawsuits on patents RPX might acquire or that patents RPX already owned could be

4 | released to RPX members Kaspersky Labs had sued for infringement for possible retaliatory use

5 | against Kaspersky Labs (http://gametimeip.com/ 2011/05/31/patent-aggregator-rpx-accused-of-

6 | extortion-racketeering-wire-fraud).

7 | 24. RPX announced that its intention was to develop a new solution for dealing with

8 | NPEs:

9 | that will increase the value we provide for our current and prospective clients.
   For example, we intend to facilitate joint defense agreements and cross-licensing
10 | arrangements among our clients. A joint defense agreement is an agreement
   among multiple defendants in a lawsuit to appoint one legal counsel or group of
11 | legal counsel to represent multiple defendants. A cross-licensing arrangement is
   an agreement among two or more parties to license some or all of their patent
12 | portfolios to each other. As part of our potential joint defense solution, we are
   developing a plan to establish a risk retention group to help our clients cover costs
13 | incurred in defending patent infringement claims.

14 | RPX Corporation, S.E.C. Registration Statement (Form S-1), at 16 (Jan. 21, 2011), *available at*

15 | http://www.secinfo.com/d14D5a.qbPx.htm.

16 | 25. By facilitating and funding joint defense arrangements, RPX enables its members

17 | to effectively act in concert in dealing with NPEs seeking to license their patents and eliminates

18 | the ability of its individual members to act independently.

19 | 26. RPX has recently offered NPE patent insurance to companies that may be sued

20 | for patent infringement by an NPE. This insurance, like the joint defense efforts, encourages

21 | group, not individual, efforts at negotiating or accepting patent licenses.

22 | **The RPX-Led Concerted Refusal to Deal**

23 | 27. Initially, RPX negotiated with Cascades to acquire license rights under all of the

24 | Cascades patents for its 100-plus members (including each of the other defendants). The

25 | COMPLAINT AND DEMAND FOR JURY TRIAL - 9 -
   CASCADES COMPUTER INNOVATION LLC v. RPX CORP., ET AL.
   DWT 19170246v1 0085000-009631

1 manufacturing defendants were required to contribute to the settlement, which would have

2 resulted in a high seven-figure payment to Cascades for a fully paid-up license. RPX's initial

3 offer to license demonstrates its recognition of the validity and value of the Cascades patents.

4       28.     RPX terminated negotiations with Cascades and withdraw its offer because one or

5 more of its members allegedly would not fund the license deal. This demonstrated that all

6 members either had to agree to a license or none would agree. On information and belief, after

7 negotiations with Cascades ended, RPX and the other defendants conspired and agreed that none

8 of them would separately negotiate with Cascades for a license and that all would act together to

9 oppose Cascades' efforts to license and enforce the '750 and other Cascades patents, including

10 through the mechanism of a joint defense arrangement among several of the defendants. On

11 information and belief, the individual manufacturing defendants all agreed among themselves

12 and with RPX not to negotiate independently with Cascades and to present a unified, concerted

13 effort to oppose licensing and enforcement of the Cascades patents, with the objective of causing

14 Cascades to abandon its efforts, accept a below-market-value offer by RPX or go out of business

15 by virtue of the expense of litigation.

16       29.     RPX members sign an agreement with RPX that effectively limits their freedom

17 to negotiate licenses independently. RPX represents that, by negotiating licenses through it,

18 royalty amounts can be reduced. By penalizing those who do not renew and continue their

19 membership in RPX, members are effectively encouraged not to deal independently with patent

20 owners like Cascades. RPX boasts that "more NPE activity spurs companies to join our

21 network" -- the network being the 110 RPX members that, together with RPX, combine and

22 conspire to accept, reject or negotiate licenses with NPEs.

23       30.     As evidence of the conspiracy, the manufacturing defendants (HTC, LG,

24 Motorola, Samsung and Dell) have clearly acted against their individual economic interests. In

25 COMPLAINT AND DEMAND FOR JURY TRIAL                          - 10 -
CASCADES COMPUTER INNOVATION LLC V. RPX CORP., ET AL.
DWT 19170246v1 0085000-009631

1    January 2012, Cascades offered each of LG, Motorola, Samsung and HTC an identical license

2    proposal that would have required a lump-sum royalty payment of $5 million for a fully paid-up

3    license under all the Cascades patents with the right to recover up to all of the payment based on

4    25% of the licensing revenues that Cascades received from any other infringer. Thus, for

5    example, if any individual defendant had accepted the offer and paid its $5 million and Cascades

6    subsequently received an additional $15 million of licensing revenues from other sources, the

7    defendant would recoup $3.75 million (25% of $15 million), so its net cost would be $1.25

8    million. If Cascades subsequently received $20 million or more, then the defendant would

9    recoup all its costs. No manufacturing defendant even responded to the offer, clearly showing

10   that the combination, agreement and conspiracy between them caused each individual defendant

11   to act contrary to its own private economic interests.

12       31.     Defendants have contracted, combined and conspired to restrain trade by jointly

13   refusing to negotiate or accept licenses under the Cascades patents. Defendants' goal is to force

14   either a drastically reduced royalty for rights under the Cascades patents or no royalty payment at

15   all.

16       32.     Google, who is also a member of RPX, benefits from the group boycott as well

17   because it lessens the royalty burden on its Android operating system. Google, like RPX,

18   encourages others not to accept licenses under patents owned by NPEs.

19

20                              **FIRST CLAIM FOR RELIEF**
                       **VIOLATION OF THE FEDERAL ANTITRUST LAWS**
                              **AGAINST ALL DEFENDANTS**

21

22       33.     This claim is brought under Sections 4 and 16 of the Clayton Act (15 U.S.C. §§

23   15 and 26): (a) to recover damages sustained by Cascades as a result of its being injured in its

24   business and property by reason of defendants' violations of the antitrust laws, particularly

25   COMPLAINT AND DEMAND FOR JURY TRIAL                                                    - 11 -
     CASCADES COMPUTER INNOVATION LLC V. RPX CORP., ET AL.
     DWT 19170246v1 0085000-009631

1 Sections 1 and 2 of the Sherman Act (15 U.S.C. §§ 1 and 2), (b) to obtain injunctive relief
2 against threatened loss or damage as a result of such violations, and (c) to recover the expense of
3 bringing and maintaining this action, including reasonable attorneys' fees.

4      34.     Cascades has the exclusive right to license and enforce the '750 patent, as well as
5 more than 30 other patents owned by Elbrus. Though the '750 patent is used as an example,
6 efforts to license the entire portfolio of Cascades/Elbrus patents is impacted by the combination
7 and conspiracy among the defendants and other RPX members.

8      35.     The '750 patent relates to software embedded in mobile phones and tablet
9 computers that permits optimization of applications when Android operating systems are used.
10 Cascades has actively sought to license the '750 patent, together with its other patents, so that the
11 patented technology could be legally shared with the entire mobile phone and tablet industry that
12 uses Android operating systems and related, relevant submarkets. There is a separate submarket
13 for licenses under the '750 patent, the other Cascades/Elbrus patents and the patented technology
14 itself within the meaning of the antitrust laws. The geographic scope of this market or submarket
15 is nationwide.

16      36.     As part of its business, Cascades has offered to license its '750 patent (and its
17 other patents) under nearly identical terms to those entities (like HTC, LG, Motorola, Samsung
18 and Dell) that sell devices that use Android operating systems and want to lawfully practice the
19 inventions of the Cascades' patents. Cascades has continuously sought to grant licenses to users
20 of its patented technology. Many separate companies have been repeatedly contacted over the
21 last year alone, including the defendants and other manufacturers (such as ASUS, Pantech
22 Wireless, Philips Electronics and Sharp Electronics). Dell and Pantech each made token offers
23 of less than $100,000 for a fully paid-up license under all the Cascades patents, offers which
24 Cascades believes were spurious and made in bad faith. Other than these token offers, no

25 COMPLAINT AND DEMAND FOR JURY TRIAL                           - 12 -
CASCADES COMPUTER INNOVATION LLC V. RPX CORP., ET AL.
DWT 19170246v1 0085000-009631

1  manufacturing entity has engaged in independent, good-faith discussions or negotiations with

2  Cascades or even acknowledged letters offering licenses, thus, acting contrary to their own

3  private interests and, ultimately, the public good. As noted above, Motorola, LG, Samsung and

4  HTC, who dominate the Android market, refused to even discuss a license, despite being offered

5  terms that could effectively result in a zero royalty. Motorola and others chose to negotiate only

6  through RPX.

7      37.    Currently, each of the manufacturing defendants, and numerous others in the

8  industry, have openly and notoriously infringed the '750 patent (and other Cascades patents)

9  and/or contributed to or induced the infringement of others of the '750 patent. But, with the

10  exception of RPX (which effectively sought to negotiate a bulk license at a single price for all of

11  its hundreds of members, including the manufacturing defendants, and then withdrew its offer

12  when its members agreed to boycott Cascades), everyone has refused to engage in any serious

13  license negotiations of any kind or even, in some cases, to acknowledge Cascades' efforts to

14  license.

15      38.    Hence, despite its efforts to license the '750 patent (and other patents), Cascades

16  has been unsuccessful with the named manufacturing defendants who control more than 95% of

17  the Android market in the United States. These defendants have market power in the Android

18  market. Prospective licensees have made no independent contact with Cascades because of

19  concerted efforts on the part of defendants (as counseled by RPX and by the Winston & Strawn

20  firm) and others like them in the relevant industry to refuse licenses under the Cascades patents.

21  This behavior has continued despite defendant RPX's purported one-time interest in purchasing

22  license rights for its members under the Cascades patents and granting licenses to its members.

23  This uniformity of action (indeed, of inaction) strongly demonstrates a group effort to refuse to

24  license, thereby forcing license prices below a competitive level at monopsony prices. Such

25  COMPLAINT AND DEMAND FOR JURY TRIAL                                           - 13 -
   CASCADES COMPUTER INNOVATION LLC V. RPX CORP., ET AL.
   DWT 19170246v1 0085000-009631

1  actions are buyer or licensee boycotts and illegal *per se*.

2  **Combination And Conspiracy In Restraint Of Trade**

3    39.    Under the auspices of agreements with RPX, joint defense agreements, NPE

4  insurance, common counsel, meetings, phone calls, emails and discussions with RPX and

5  otherwise, defendants have met, conferred, conspired, combined and agreed among themselves

6  and, on information and belief, with other potential licensees of the Cascades patents, that they

7  would not accept licenses from Cascades under terms and conditions offered by Cascades (even

8  with the potential of no royalty) but, instead, have decided they would infringe without the

9  payment of any royalties and, thus, would collectively continue to jointly refuse to license the

10  Cascades patents. This has become clear from the uniformity of action by defendants, even

11  against their own economic interests.

12    40.    As one example, many of the manufacturing defendants have used common

13  counsel, the law firm of Winston & Strawn, to not only coordinate efforts in the defense of

14  pending lawsuits for patent infringement, but also to create uniform action in refusing to consider

15  or accept (or, for that matter, even discuss) a license under the Cascades patented technology.

16  The common representation has been solicited and then used to be certain that the defendants do

17  not operate independently in evaluating the terms and conditions of a license under the Cascades

18  patents. Winston publishes a website in which its partners have urged companies not to

19  negotiate licenses with NPEs.

20    41.    Based on the uniformity of action, the '750 patent has been discussed by

21  defendants, and agreements and understandings have been made to attack the '750 patent rather

22  than to accept a license under it. RPX, which itself accumulates patents, was involved in the

23  combination and conspiracy and knows that the manufacturing defendants have combined to

24  refuse any reasonable license offer. Like Winston, RPX encourages individual entities not to

1 | independently accept licenses from NPEs.

2 |     42.    RPX has suggested that companies join its organization to gain leverage in

3 | obtaining licenses from patent owners like Cascades at lower prices. It has also threatened those

4 | who do not join its pool with the risk that RPX might sell some of its patents to direct

5 | competitors for enforcement.

6 |     43.    In furtherance of the conspiracy and combination, defendants have now jointly

7 | engaged in a common defense against the '750 patent and the other Cascades patents. In that

8 | way, they effectively have agreed to limit their individual freedom of action in dealing with

9 | Cascades, even against their private economic interests; they have shared information through

10 | RPX and others (including the Winston & Strawn law firm) concerning their purported separate

11 | and independent negotiations with Cascades; they have agreed to cooperate and to share

12 | expenses for and to assist each other in attacking the Cascades patents; they have, through RPX,

13 | also attempted to persuade other potential licensees not to discuss or accept a license from

14 | Cascades under any terms or conditions; and, they have agreed not to negotiate with or accept

15 | licenses from Cascades without consulting and agreeing with other members of the conspiracy

16 | concerning the acceptability of the terms offered by Cascades, all for the purpose of assuring

17 | uniformity of action in accepting or rejecting Cascades' efforts to grant licenses under its patents

18 | and, thus, controlling the royalty rate and terms under which the patents are licensed. On

19 | information and belief, others in the industry are also involved with the named defendants and

20 | have discussed and agreed upon joint courses of action in dealing with the Cascades patents.

21 |     44.    Based on their uniformity of action, defendants have not negotiated separately and

22 | independently with Cascades but have, in fact, been sharing information via RPX, Winston &

23 | Strawn and otherwise concerning their boycott of any license negotiations and have been acting

24 | jointly and in combination. The various meetings, discussions and communications between

25 | COMPLAINT AND DEMAND FOR JURY TRIAL                           - 15 -
CASCADES COMPUTER INNOVATION LLC V. RPX CORP., ET AL.
DWT 19170246v1 0085000-009631

1  defendants and others have taken place for the express purpose and with the effect of creating a

2  uniform, agreed upon course of action among them in refusing to accept a license under the

3  Cascades patents except upon terms which defendants could jointly dictate. Defendants have not

4  acted independently, but instead have conspired and agreed to restrict their independent action in

5  negotiating a license with Cascades.

6      45.    As a consequence of the above-referenced combination and joint action,

7  defendants, in combination with others, have prevented Cascades from licensing its patents

8  separately and independently to each of the members of the relevant industry, and have jointly

9  dictated the terms and conditions of any license that would be acceptable.

10                          **Effects Of The Conspiracy And Combination**

11     46.    Defendants HTC, LG, Motorola, Samsung and Dell sell more than 95% of all

12  mobile phones and tablets that use the Android operating systems in the United States and are an

13  important part of the Android market and related, relevant sub-markets (including products that

14  require a license from Cascades under its patented technology). The manufacturing defendants

15  constitute nearly the total demand for the licensing of Cascades' patented technology and

16  collectively enjoy substantial market power in that market and, together with others in the

17  industry, have exercised their power to control the acceptance and terms and conditions of

18  licenses from Cascades. This power is augmented by the willingness and agreement of the

19  manufacturing defendants to infringe Cascades' patents until such time as Cascades capitulates

20  by either going out of business, declining to enforce the patents or offering defendants patent

21  license terms below fair market value.

22     47.    As a direct and proximate result of the aforesaid conspiracy, Cascades has been

23  unable to independently negotiate a single license with any of the defendants, or others in the

24  industry, on terms and conditions that would have been established by the forces of supply and

25  COMPLAINT AND DEMAND FOR JURY TRIAL                                                    - 16 -
   CASCADES COMPUTER INNOVATION LLC V. RPX CORP., ET AL.
   DWT 19170246v1 0085000-009631

1    demand in an unrestrained market; Cascades has been unable to consummate a license with any

2    defendant; it has been prevented from obtaining royalties and other compensation it would

3    otherwise have received for licenses under the Cascades patents; and, it has been forced to incur

4    the expense of enforcing the Cascades patents against defendants and others. That not a single

5    major supplier of mobile phones using the Android operating systems would even discuss or

6    consider a license or even acknowledge Cascades' letters or efforts to grant licenses shows the

7    uniformity of the boycott. The common defense agreements (whether reduced to writing or not)

8    share a common purpose: do not settle with Cascades; do not discuss the possibility of a license;

9    do not negotiate independently; act consistently with each other. Further, by agreeing to

10    negotiate only through RPX, the manufacturing defendants have effectively sought a license at a

11    much lower price than if they acted independently. Indeed, although some defendants acting

12    through RPX initially supported the idea of accepting a license, that support eroded and the

13    defendants then joined forces and effectively agreed not to accept a license at any price.

14        48.     The conspiracy complained of by Cascades has unreasonably restrained

15    competition in the market or submarket for the licensing by Cascades of its patented technology

16    in violation of the rule of reason and Section 1 of the Sherman Act.

17        49.     The conduct complained of by Cascades also constitutes a *per se* illegal

18    combination or conspiracy by defendants to fix the prices, terms and conditions of licenses under

19    Cascades' patented technology and thereby violates Section 1 of the Sherman Act.

20        50.     The conduct complained of by Cascades also constitutes a horizontal boycott and

21    concerted refusal to deal by defendants which violates both the *per se* rule and the rule of reason

22    and accordingly violates Section 1 of the Sherman Act.

23        51.     The aforesaid violations are continuing, and unless enjoined by this Court, will

24    continue to cause irreparable harm to Cascades for which there is no adequate remedy at law.

25    COMPLAINT AND DEMAND FOR JURY TRIAL                        - 17 -
       CASCADES COMPUTER INNOVATION LLC V. RPX CORP., ET AL.
       DWT 19170246v1 0085000-009631

1

**Injury To Competition**

2    52.    The acts of defendants complained of herein have injured competition in at least

3  the following ways. Defendants' combination and concerted activities have the purpose and

4  effect of artificially and unlawfully diminishing the value of products and services in the relevant

5  market, i.e., licenses. Such artificial devaluation has the purpose and effect of reducing

6  plaintiff's and any NPE's incentives to innovate or support innovation, and restricting plaintiff's

7  activities in pursuit of its business purpose of developing or supporting the development of

8  technology for new and useful products that would compete in the marketplace with the existing

9  products of the manufacturing defendants. Thus, output of new technologies is restricted, and

10  prices of existing technologies are inflated. Further, by acting together to boycott Cascades (and

11  most other NPEs), defendants as a group, and RPX and its members, have created a buyer cartel,

12  the object of which is to force the price for a license below a competitive level, indeed, to

13  monopsony prices or, in this case, no price at all.

14    53.    Defendants' conduct also has the purpose and effect of driving plaintiff Cascades

15  out of business. By refusing a license at any price and further concentrating market power

16  (through the accumulation of patents), RPX and the other defendants have effectively raised

17  prices and reduced output in products covered under the relevant patents.

18    54.    Defendants' conduct also has the purpose and effect of raising barriers to entry in

19  the market for licenses. With buyers setting interdependent, collusive and artificially diminished

20  prices, chances of any NPE entering the marketplace are reduced. Defendants know this and are

21  implementing a plan to eliminate all NPEs (at least those that seek to license their patent rights),

22  effectively eliminating a major source of innovation and new invention.

23

**Injury To Cascades**

24    55.    As a direct result of the aforesaid combination and conspiracy among defendants,

25  COMPLAINT AND DEMAND FOR JURY TRIAL                                                    - 18 -
   CASCADES COMPUTER INNOVATION LLC V. RPX CORP., ET AL.
   DWT 19170246v1 0085000-009631

1    and the actions taken pursuant thereto, Cascades has been injured in its business and property as

2    follows:

3              a.    Cascades has been unable to effect any license agreements with

4    defendants or anyone else under reasonable terms and conditions which it otherwise

5    would have been able to accomplish, and has lost substantial royalty income as a result;

6              b.    Cascades has been precluded from business growth which it would

7    otherwise have achieved;

8              c.    Cascades has been required to incur extraordinary legal expenses to

9    enforce its patents against the manufacturing defendants and others; and,

10             d.    Cascades has otherwise been injured in its business and property.

11   WHEREFORE, Cascades prays for relief as set forth below.

12                           **SECOND CLAIM FOR RELIEF**
                   **MONOPSONIZATION, CONSPIRACY TO MONOPSONIZE**
13                      **AND ATTEMPT TO MONOPSONIZE**
                          **AGAINST ALL DEFENDANTS**
14

15   56.    Cascades realleges and reincorporates paragraphs 1 through 55 above as though

     specifically set forth herein.
16

17   57.    Defendants have combined and conspired for the specifically anticompetitive

18   purpose and with the effect of eliminating competition between themselves in the purchase of

19   licenses from Cascades under its patented technology and also for the specifically

20   anticompetitive purpose and with the effect of obtaining and maintaining the power to control the

21   royalty rate (i.e., prices) and terms and conditions under which such patented technology would

22   be licensed. Defendants have accordingly conspired to monopsonize (i.e., accumulate market

23   power over the buyer's side of the market sufficient to confer effective control of that market) the

24   relevant market and submarkets alleged herein in violation of Section 2 of the Sherman Act.

25

1    58.    Defendants' unlawful conduct alleged herein has been undertaken for the

2    specifically anticompetitive purpose of obtaining or maintaining monopsony power over terms

3    and conditions upon which Cascades can license its patented technology to buyers thereof.

4    Unless restrained by this Court, there is a dangerous likelihood that defendants will succeed in

5    the illegal scheme and obtain monopsony power within the relevant market or submarkets

6    alleged herein in violation of Section 2 of the Sherman Act.

7    59.    Through conspiratorial and anticompetitive conduct which is not the result of

8    good business skill or acumen, defendants have obtained and maintained monopsony power

9    which allows them to control the terms and conditions upon which the prospective licensees of

10   Cascades' patented technology will agree to license such technology, all to the exclusion of

11   competition for licenses under Cascades' patented technology and so as to monopsonize the

12   relevant market and submarkets alleged herein in violation of Section 2 of the Sherman Act.

13          WHEREFORE, Cascades prays for relief as set forth below.

14   **THIRD CLAIM FOR RELIEF**
     **VIOLATION OF THE CARTWRIGHT ACT**
15   **(CAL. BUS. & PROF. CODE §§ 16700, *et. seq.*)**
     **AGAINST ALL DEFENDANTS**

16
     60.    Cascades realleges and reincorporates paragraphs 1 through 59 above as though
17
     specifically set forth herein.
18
     61.    Defendants formed and operate a trust and have combined their resources as set
19
     forth above. The purpose and effect of the trust is to restrain trade and competition. The anti-
20
     competitive effect of this restraint outweighs any beneficial effect on competition.
21
     62.    Defendants' illegal conduct described herein constitutes an unlawful trust that
22
     restrains trade, commerce, and competition in violation of California Business and Professions
23
     Code § 16700.
24

25   COMPLAINT AND DEMAND FOR JURY TRIAL                                              - 20 -
     CASCADES COMPUTER INNOVATION LLC V. RPX CORP., ET AL.
     DWT 19170246v1 0085000-009631

63.     Defendants' conduct has caused injury to Cascades and defendants' conduct is a substantial factor in that injury.

WHEREFORE, Cascades prays for relief as set forth below.

## FOURTH CLAIM FOR RELIEF
## VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW
## (CAL. BUS. & PROF. CODE. §§ 17200 *et seq.*)
## AGAINST ALL DEFENDANTS

64.     Cascades realleges and reincorporates paragraphs 1 through 63 above as though specifically set forth herein.

65.     Defendants' conduct has been unlawful and in violation of the California unfair competition law and, as alleged above, the conduct is an unlawful and unfair business practice. The conduct violates both the Sherman Act and the California Cartwright Act and offends the established public policy of California. The harm caused by defendants' conduct outweighs any benefits the conduct could possibly have.

66.     Defendants' "unfair" and "unlawful" actions discussed herein constitute unfair competition within the meaning of California Business and Professions Code § 17200. Defendants' violations of Federal and California antitrust laws have caused irreparable harm to Cascades, entitling it to immediate and permanent injunctive relief and to restitution.

WHEREFORE, Cascades prays for relief as set forth below.

## PRAYER FOR RELIEF

WHEREFORE, Cascades asks this Court to enter judgment against defendants, their subsidiaries, affiliates, agents, servants, employees, attorneys and all persons in active concert or participation with them, granting it the following relief:

COMPLAINT AND DEMAND FOR JURY TRIAL
CASCADES COMPUTER INNOVATION LLC v. RPX CORP., ET AL.
DWT 19170246v1 0085000-009631

- 21 -

1    A.    A finding that the conspiracy, combination, understanding and agreement by and
2  among the defendants, and others, and the other actions alleged above are in violation of
3  Sections 1 and 2 of the Sherman Act;

4    B.    A judgment in Cascades' favor and against defendants, jointly and severally, in an
5  amount according to proof, which the evidence will show Cascades has sustained as a result of
6  its being injured in its business and property as a result of defendants' violations of the antitrust
7  laws and of Cascades' statutory rights, all as provided for under Section 4 of the Clayton Act (15
8  U.S.C. § 15);

9    C.    An injunction against each of the unlawful practices alleged, including under the
10  California Business and Professions Code §§ 17200, et seq.;

11    D.    An award of retribution;

12    E.    An award to Cascades of the costs of suit, including its reasonable attorneys' fees;

13    F.    An award of damages for violation of the Cartwright Act.

14    G.    Such other and further relief as this Court and/or a jury may deem proper and just.

NIRO HALLER & NIRO
DAVIS WRIGHT TREMAINE LLP

By:_____
Martin L. Fineman

Attorneys for Plaintiff
Cascades Computer Innovation LLC

21  ///
22  ///
23  ///

1

## JURY DEMAND

2

Cascades demands a trial by jury of all issues so triable.

3

NIRO HALLER & NIRO
DAVIS WRIGHT TREMAINE LLP

4

5

By:_____
Martin L. Fineman

6

7

Attorneys for Plaintiff
Cascades Computer Innovation LLC

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

COMPLAINT AND DEMAND FOR JURY TRIAL
Cascades Computer Innovation LLC v. RPX Corp., et al.
DWT 19170246v1 0085000-009631

- 23 -