JONATHAN M. JACOBSON
jjacobson@wsgr.com
CHUL PAK (admitted *pro hac vice*)
cpak@wsgr.com
DANIEL P. WEICK (admitted *pro hac vice*)
dweick@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1301 Avenue of the Americas
New York, NY 10019
Telephone:  (212) 999-5800
Facsimile:   (212) 999-5899

LISA A. DAVIS, State Bar No. 179854
ldavis@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304
Telephone:  (650) 493-9300
Facsimile:  (650) 493-6811

Attorneys for Defendant HTC Corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| CASCADES COMPUTER INNOVATION LLC,<br><br>Plaintiff,<br><br>v.<br><br>RPX CORPORATION, HTC CORPORATION, MOTOROLA MOBILITY, INC., and SAMSUNG ELECTRONICS CO. LTD.,<br><br>Defendants. | CASE NO.:  C 12-cv-1143 (YGR)<br><br>**JOINT MOTION TO DISMISS OF DEFENDANTS HTC CORPORATION, SAMSUNG ELECTRONICS CO., LTD., AND MOTOROLA MOBILITY, INC.**<br><br>Date: April 30, 2013<br>Time:  2:00 PM<br>Location: Courtroom 5<br><br>The Honorable Yvonne Gonzales Rogers |

1

**TABLE OF CONTENTS**

2

**Page**

3 TABLE OF AUTHORITIES ..................................................................................................ii

4 NOTICE OF MOTION AND MOTION TO DISMISS ...................................................... 1

5 RELIEF SOUGHT .............................................................................................................. 1

6 MEMORANDUM OF POINTS AND AUTHORITIES ..................................................... 2

7 STATEMENT OF THE ISSUES TO BE DECIDED ......................................................... 2

8 I. INTRODUCTION.................................................................................................... 3

9 II. STATEMENT OF THE CASE ................................................................................ 5

10        A. New Allegations.......................................................................................... 6

11        B. Facts Previously Admitted or Subject to Judicial Notice........................... 7

12 III. ARGUMENT ........................................................................................................... 9

13        A. The Amended Complaint Still Fails to Allege a Plausible Conspiracy ................. 9

14             1. Cascades' "Horizontal" Conspiracy Allegations are Conclusory and Unsupported ................................................................................ 10

15

16             2. Membership in RPX is Not "Conspiracy" ................................. 13

17             3. The "Conspiracy" Allegations Still Make no Economic Sense ............... 14

18        B. Cascades Fails to Plead an Antitrust Violation ...................................... 17

19             1. No restraint ................................................................................. 17

20             2. No unreasonable restraint or monopsonization ......................... 18

21        C. Cascades' State Law Claims Fail with Its Federal Claims.................... 22

22        D. The Amended Complaint Confirms Defendants' Alleged Conduct is Immune from Antitrust Scrutiny Under the *Noerr-Pennington* Doctrine............ 22

23        E. Cascades' Claims Should be Dismissed with Prejudice ....................... 24

24 IV. CONCLUSION ...................................................................................................... 25

25

26

27

28

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*AD/SAT v. Associated Press*, 181 F.3d 216 (2d Cir. 1999) ................................. 14

*Adaptive Power Solutions, LLC v. Hughes Missile Sys. Co.*, 141 F.3d 947
    (9th Cir. 1998) ................................................................................ 19

*Agnew v. NCAA*, 683 F.3d 328 (7th Cir. 2012) ........................................ 22

*Apple, Inc. v. Psystar Corp.*, 586 F. Supp. 2d 1190 (N.D. Cal. 2008) ...................... 21, 22

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................................................. 9, 15, 24

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................... *passim*

*Broadcast Music, Inc. v. CBS,* 441 U.S. 1 (1979) .......................................... 17

*Brown Shoe Co. v. United States*, 370 U.S. 294 (1962) .................................... 21

*Buffalo Broad. Co. v. ASCAP*, 744 F.2d 917 (2d Cir. 1984) ............................... 18

*Cascades Computer Innovation, LLC v. Dell Inc.*, 11-cv-7264,
    (N.D. Ill. Feb. 4, 2013) ........................................................................ 9

*Cascades Computer Innovation, LLC v. HTC Corp. and LG Elecs., Inc.*,
    11-cv-6235 (N.D. Ill. 2011) .................................................................. 7, 12

*Cascades Computer Innovation, LLC v. Motorola Mobility Holdings Inc. and*
    *Samsung Elecs. Co.*, 11-cv-4574 (N.D. Ill. 2011) ....................................... 7, 12

*CBS, Inc. v. ASCAP,* 620 F.2d 930 (2d Cir. 1980) ....................................... 17, 18

*Columbia Pictures Indus., Inc. v. Prof'l Real Estate Investors, Inc.*, 944 F.2d
    1525 (9th Cir. 1991), *aff'd on other grounds*, 508 U.S. 49 (1993) ............. 5, 22, 23

*Eastern Food Servs. v. Pontifical Catholic Univ.*, 357 F.3d 1 (1st Cir. 2004)................. 19

*Forsyth v. Humana, Inc.*, 114 F.3d 1467 (9th Cir. 1997) ................................. 21

*Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180 (9th Cir. 2005)................. 5, 22, 23, 25

*Green Country Food Market, Inc. v. Bottling Group*, 371 F.3d 1275
    (10th Cir. 2004) .............................................................................. 21

*Illinois Tool Works Inc. v. Independent Ink, Inc.*, 547 U.S. 28 (2006).............................. 21

*In re ATM Fee Antitrust Litig.*, 554 F. Supp. 2d 1003 (N.D. Cal. 2008), *aff'd*,
    686 F.3d 741 (9th Cir. 2012) ................................................................ 19

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
    546 F.3d 981 (9th Cir. 2008) ................................................................ 25

*In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896 (6th Cir. 2009) ...................... 16

*Jacobs v. Tempur-Pedic Int'l Inc.*, 626 F.3d 1327 (11th Cir. 2010) ........................... 20, 22

*Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042 (9th Cir. 2008) ...................................... *passim*

*Kottle v. Nw. Kidney Ctrs.*, 146 F.3d 1056 (9th Cir. 1998) .................................. 22, 23, 24

*Leegin Creative Leather Prods. v. PSKS, Inc.*, 551 U.S. 877 (2007).............................. 19

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ................. 14, 15

*Mayor & City Council of Baltimore v. Citigroup, Inc.*, --- F.3d ---,
  Nos. 10-0722-cv(L), 10-0867-cv(CON), 2013 WL 791397 (2d Cir.
  Mar. 5, 2013) ................................................................................................... 10, 11

*MedioStream, Inc. v. Microsoft Corp.*, 869 F. Supp. 2d 1095
  (N.D. Cal. 2012) ...................................................................................................... 15

*Mesirow v. Pepperidge Farm Inc.*, 703 F.2d 339 (9th Cir. 1983).................................... 18

*Mularkey v. Holsum Bakery Inc.*, 146 F.3d 1064 (9th Cir. 1998) .................................... 18

*N. Jackson Pharm., Inc. v. Caremark RX, Inc.*, 385 F. Supp. 2d 740
  (N.D. Ill. 2005) ........................................................................................................ 19

*Nw. Wholesale Stationers v. Pac. Stationery & Printing Co.*, 472 U.S. 284
  (1985)................................................................................................................. 18, 19

*NYNEX Corp. v. Discon, Inc.*, 525 U.S. 128 (1998) ......................................................... 19

*Ohio-Sealy Mattress Mfg. Co. v. Sealy, Inc.*, 585 F.2d 821 (7th Cir. 1978) .................... 18

*Or. Natural Res. Council v. Mohla*, 944 F.2d 531 (9th Cir. 1991) ................................... 22

*Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430 (3d Cir. 1997)............ 21, 22

*RealNetworks, Inc. v. DVD Copy Control Ass'n*, Nos. C 08-4548 MHP, C
  08-4719 MHP, 2010 WL 145098 (N.D. Cal. Jan. 8, 2010) ............................ 24, 25

*Reyn's Pasta Bella, LLC v. Visa U.S.A., Inc.*, 259 F. Supp. 2d 992
  (N.D. Cal. 2003) ...................................................................................................... 20

*Sosa v. DirectTV, Inc.*, 437 F.3d 923 (9th Cir. 2006)....................................................... 24

*State Oil Co. v. Khan*, 522 U.S. 3 (1997) ......................................................................... 20

*Stop & Shop Supermarket Co. v. Blue Cross & Blue Shield of R.I.*,
  373 F.3d 57 (1st Cir.2004)....................................................................................... 19

*Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991
  (9th Cir. 2008) ......................................................................................................... 22

*Thurman Indus., Inc. v. Pay 'N Pak Stores, Inc.*, 875 F. 2d 1369
  (9th Cir. 1989) ......................................................................................................... 20

*Universal Grading Serv. v. eBay, Inc.*, No. C-09-2755 RMW, 2012 WL
    70644 (N.D. Cal. Jan. 9, 2012) ................................................................. 16

*William O. Gilley Enters., Inc. v. Atl. Richfield Co.*, 588 F.3d 659
    (9th Cir. 2009) ......................................................................... 9, 10, 14

**STATUTES**

35 U.S.C. § 283 ............................................................................................ 16

35 U.S.C. § 284 ............................................................................................ 16

35 U.S.C. § 285 ............................................................................................ 16

15 U.S.C. § 1 (Sherman Act Section 1) .............................................. *passim*

15 U.S.C. § 2 (Sherman Act Section 2) .............................................. *passim*

**RULES**

FED. R. CIV. P. 12(b)(6) .............................................................................. 1, 9

FED. R. CIV. P. 11 .......................................................................................... 6

**MISCELLANEOUS**

FEDERAL TRADE COMM'N, THE EVOLVING IP MARKETPLACE: ALIGNING
    PATENT NOTICE AND REMEDIES WITH COMPETITION 8-9 (2011) ........................... 6

William J. Baumol & Janusz A. Ordover, *Use of Antitrust to Subvert
    Competition*, 28 J. L. & ECON. 247 (1985) ................................................. 6

1

**NOTICE OF MOTION AND MOTION TO DISMISS**

2
3
4
5
6
7
8
9
10
11
12

PLEASE TAKE NOTICE that on April 30, 2013, at 2:00 p.m., or as soon thereafter as the matter may be heard, in the United States District Court, Northern District of California, at 1301 Clay Street, Oakland City Center, Oakland, CA 94612, before the Honorable Yvonne Gonzales Rogers, Defendants HTC Corporation ("HTC"), Samsung Electronics Co., Ltd. ("Samsung"), and Motorola Mobility, Inc. ("Motorola") (collectively, "Manufacturing Defendants") will, and hereby do, move the Court for an order dismissing Plaintiff's Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  This motion is based on the Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Proposed Order, the pleadings on file in this action, and upon such other matters presented to the Court at the time of the hearing.

13

**RELIEF SOUGHT**

14
15
16
17

Defendants HTC, Samsung, and Motorola seek dismissal of each claim asserted against them in Plaintiff's Amended Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6).  These Defendants also join in and support the motion to dismiss being filed concurrently by co-defendant RPX Corporation.

18
19
20
21
22
23
24
25
26
27
28

DEFENDANTS HTC, SAMSUNG, AND MOTOROLA'S
JOINT MOTION TO DISMISS
CASE NO. C-12-CV-1143 (YGR)

-1-

1    **MEMORANDUM OF POINTS AND AUTHORITIES**

2    **STATEMENT OF THE ISSUES TO BE DECIDED**

3         1.    Whether all of Plaintiff's claims against Manufacturing Defendants should

4    be dismissed because the Amended Complaint still fails to allege a plausible conspiracy

5    under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and its progeny.

6         2.    Whether all of Plaintiff's claims against Manufacturing Defendants should

7    be dismissed for failure to plead facts that, if proven, would establish an antitrust

8    violation, in the light of the Amended Complaint's failure to allege a restraint of trade,

9    failure to allege *per se* unlawful conduct, and failure to define a plausible relevant

10   product market.

11        3.    Whether the insufficiency of Cascades' Sherman Act claims requires

12   dismissal of its state law claims as well.

13        4.    Whether all of Plaintiff's claims against Manufacturing Defendants should

14   be dismissed because they are barred by the *Noerr-Pennington* doctrine.

15        5.    Whether Plaintiff's claims against Manufacturing Defendants should be

16   dismissed with prejudice.

17

18

19

20

21

22

23

24

25

26

27

28

# I.     INTRODUCTION

In dismissing the original Complaint filed by Cascades Computer Innovation, LLC ("Cascades"), this Court observed a number of fatal deficiencies, including that:

- "Cascades alleges that the Manufacturing Defendants 'conspired,' but Cascades 'does not answer any of the basic questions: who, did what, to whom (or with whom), where, and when?' . . . .  Instead, the allegations in the Complaint consist primarily of threadbare recitals of conspiracy."  Dkt No. 93 at 9.

- "[A]ll Cascades has alleged is 'parallel behavior.'  This is the sort of generic pleading—alleging misconduct against various defendants without specifics as to the role each played—that was rejected by *Twombly* . . . ."  *Id.* at 10.

- "Cascades has failed to identify specifically what it considers to be the relevant market" and "avoids its pleading obligation with subterfuge."  *Id.* at 15.

- "Cascades has not alleged that Defendants' unlawful conduct caused Cascades to suffer the type of injury that the antitrust laws were meant to prevent."  *Id.* at 17.

- Cascades fails "to provide specific facts to clarify why, absent a conspiracy, it is economically irrational for the Manufacturing Defendants—who are being sued by Cascades for infringement of one patent, the '750 patent—to decline an offer to license Cascades' entire portfolio of 38 patents."  *Id.* at 19-20.

- "[T]he circumstances giving rise to this lawsuit plausibly suggest nothing more than a tactical ploy to regain economic leverage that Plaintiff lost in . . . licensing negotiations."  *Id.* at 20.

When asked by the Court at the August 21, 2012 hearing on Manufacturing Defendants' motion to dismiss whether Cascades had "[a]nything else" to allege "in terms of the individual actions of the individual Defendants," Cascades' counsel candidly admitted that he did not.  Dkt. No. 92 at 20:11-15.  Cascades' Amended Complaint bears out that admission, and does nothing to remedy any of the fatal deficiencies in the

1   original Complaint.   This Court should, accordingly, dismiss the claims against
2   Manufacturing Defendants with prejudice.

3       1.      The Amended Complaint still lacks any non-conclusory allegations
4   suggesting the existence of a conspiracy involving Manufacturing Defendants.  It thus
5   continues to fall short the pleading requirements established by *Bell Atlantic Corp. v.*
6   *Twombly*, 550 U.S. 544 (2007), and its progeny.   As before, the only facts alleged are
7   that:

8   • Cascades attempted and failed to agree to a license with RPX,

9   • Manufacturing Defendants are members of RPX, and

10  • Manufacturing Defendants have refused to settle Cascades' patent infringement
11      suit on the terms Cascades has demanded.

12      Nothing in these allegations supports an inference that Manufacturing Defendants
13  have done anything other than make unilateral assessments of their own strategic interests
14  in responding to Cascades' litigation campaign.   Like the original Complaint, the
15  Amended Complaint contains nothing from which to infer plausibly that Cascades'
16  inability to extract royalties for its alleged patents was "due to a conspiracy in a particular
17  market, rather than due to individual business disputes between independent actors."
18  Dkt. No. 93 at 17.  In the absence of anything beyond organizational membership and
19  parallel conduct, Cascades cannot meet *Twombly*'s pleading requirements.

20      As this Court observed, the existence of a conspiracy is an essential element of all
21  the claims Cascades asserts against Manufacturing Defendants.   Cascades' failure to
22  plead a plausible conspiracy therefore requires dismissal of all its claims.   Further,
23  Cascades' admission in open court that it lacks any additional facts pertaining to
24  Manufacturing Defendants means its claims should be dismissed with prejudice as any
25  further amendment would be futile.

26      2.      In addition to the failure to allege a plausible conspiracy despite this
27  Court's clear instructions, the Amended Complaint fails to allege facts supporting either

28

DEFENDANTS HTC, SAMSUNG, AND MOTOROLA'S                -4-
JOINT MOTION TO DISMISS
CASE NO. C-12-CV-1143 (YGR)

1    *per se* or rule of reason antitrust claims.  The Amended Complaint's allegations set forth

2    no "restraint" of trade at all.  And, even if they did, the conduct is associated with cost-

3    saving efficiencies that preclude application of the *per se* rule.  Moreover, by failing to

4    allege facts supporting any plausible relevant product market, Cascades has also failed to

5    allege an essential element of its rule of reason and Sherman Act Section 2 claims.

6         3.     The same defects further justify dismissal of all Cascades' redundant state

7    law claims.

8         4.     Furthermore, the Amended Complaint confirms that Cascades attacks

9    conduct subject to *Noerr-Pennington* immunity.  The relevant events all took place after

10   the filing of Cascades' patent infringement complaints, meaning any "conspiracy" not to

11   license Cascades patents is a "conspiracy" not to settle the patent cases.  Controlling

12   precedent clearly establishes that such a joint refusal to settle is protected by the *Noerr-*

13   *Pennington* doctrine and that joint defense conduct receives the same protection as joint

14   prosecution conduct.  *See Columbia Pictures Indus., Inc. v. Prof'l Real Estate Investors,*

15   *Inc.*, 944 F.2d 1525, 1528-29 (9th Cir. 1991), *aff'd on other grounds*, 508 U.S. 49 (1993);

16   *Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180, 1185-86 (9th Cir. 2005).

17        5.     Finally, Cascades' Amended Complaint should be dismissed with prejudice

18   because it fails to allege facts correcting the dispositive deficiencies identified in this

19   Court's dismissal order, and the new facts it does allege confirm that Cascades has no

20   viable antitrust claims.

21   **II.    STATEMENT OF THE CASE**

22        Cascades alleges that Manufacturing Defendants and RPX conspired to refuse to

23   settle Cascades' patent infringement allegations against Manufacturing Defendants and

24   other RPX members.  By order dated January 24, 2013, this Court dismissed Cascades'

25   original Complaint for, *inter alia*, failure to allege a plausible conspiracy, failure to allege

26   a plausible relevant market, failure to allege antitrust injury, and failure to allege a claim

27   that makes economic sense.  Dkt. No. 93, at 10, 15, 17, & 20.  The Court allowed

28

DEFENDANTS HTC, SAMSUNG, AND MOTOROLA'S     -5-
JOINT MOTION TO DISMISS
CASE NO. C-12-CV-1143 (YGR)

1    Cascades leave to amend "to the extent the Complaint can be amended consistent with

2    th[e Court's] Order and Rule 11." *Id.* at 2.

3        **A.    NEW ALLEGATIONS**

4        The main target of Cascades' ire is the RPX business model, which generates

5    economies of scale in licensing, facilitates defensive patent licensing, and reduces

6    litigation costs.  *See* Amended Compl. ¶¶ 19-30 (attacking RPX's "business model").

7    That business model naturally threatens the traditional patent assertion entity ("PAE")

8    business model of reliance on litigation threats to extract licensing revenues for

9    previously unasserted patents.  *See* Dkt. No. 54-4, FEDERAL TRADE COMM'N, THE

10   EVOLVING IP MARKETPLACE: ALIGNING PATENT NOTICE AND REMEDIES WITH

11   COMPETITION 8-9 (2011) (describing traditional PAE business model and its effects).

12   Cascades here seeks to use the antitrust laws to attack RPX's competing model.  *See*

13   William J. Baumol & Janusz A. Ordover, *Use of Antitrust to Subvert Competition*, 28 J.

14   L. & ECON. 247 (1985) (describing strategic use of antitrust complaints to hinder

15   legitimate competition).

16       Cascades' principal new allegations in its Amended Complaint concern its 2011

17   negotiations with RPX.  The first interaction noted in the Amended Complaint between

18   Cascades and any Defendant is the claim that RPX Head of Acquisitions Kevin Barhydt

19   had contacted Cascades about a possible licensing deal for its Elbrus patent portfolio

20   "[b]y May-June 2011 . . . ."[1]  Amended Compl. ¶ 19.  Cascades sued RPX-member

21   Hynix on an Elbrus patent in June 2011, sued Motorola and Samsung for allegedly

22   infringing U.S. Patent No. 7,065,750 ("the '750 patent") in July 2011, and sued HTC and

23   LG Electronics, Inc. ("LG") on the same patent in September 2011.  *Id.* ¶ 103.  *See also*

24   *Cascades Computer Innovation, LLC v. Motorola Mobility Holdings Inc. and Samsung*

25   *Elecs. Co.,* 11-cv-4574 (N.D. Ill. 2011); *Cascades Computer Innovation, LLC v. HTC*

26

27   _____

     [1]   The Amended Complaint alleges no demand letters or other litigation threats Cascades had
          made against RPX members before RPX reached out to Cascades.

28

1   *Corp. and LG Elecs., Inc.*, 11-cv-6235 (N.D. Ill. 2011). (This Court has taken judicial
2   notice of the related patent litigations. *See* Dkt. No. 93 at 4-5.)

3         According to the Amended Complaint, negotiations with RPX picked up steam in
4   late September 2011 when Mr. Barhydt supposedly told Cascades that RPX had funding
5   to license the Elbrus patents. Amended Compl. ¶ 32. The license being discussed would
6   have covered "most of [RPX's] 100-plus members" and would have resulted in a "seven-
7   figure payment" to Cascades. *Id*. ¶ 31. In October 2011, however, RPX had to withdraw
8   its offer, says Cascades, because one RPX member would not fund the deal. *Id*. ¶ 33.
9   The Amended Complaint does not identify which member, let alone allege that any
10  Manufacturing Defendant had any role in the deal falling through.

11        Cascades also quotes certain communications from Mr. Barhydt stating that an
12  RPX deal would need to cover all of the Elbrus patents at a price RPX's members found
13  appropriate. *Id*. ¶¶ 34-35 (quoting Mr. Barhydt as saying "we aren't in a position where
14  we can pay more for something than our clients value it at" and "our clients don't want to
15  solve this one Cascades case (on the '750 patent) – only to basically fund additional
16  litigations from Cascades"). While the Amended Complaint (like the original Complaint)
17  makes threadbare allegations that meetings and other discussions took place, the only
18  specific meeting it identifies is a meeting between RPX and Pantech Wireless, Inc.
19  ("Pantech"), a non-party to this case. *Id*. ¶ 34. The Amended Complaint makes no new
20  allegations against any Manufacturing Defendant that support Cascades' conspiracy
21  claims and, indeed, eliminates allegations that Dell Inc. ("Dell") and LG participated in
22  the alleged conspiracy.

23        **B.    FACTS PREVIOUSLY ADMITTED OR SUBJECT TO JUDICIAL NOTICE**

24        Cascades has previously admitted that RPX members retain the ability to engage
25  in separate patent licensing negotiations. Dkt. No. 1 at ¶ 20. In fact, Cascades has
26  achieved settlements on the '750 patent with LG and Koninklijke Philips Electronics
27  N.V. *See* Dkt. No. 93 at 5 (noting settlements); Amended Compl. ¶ 42. In addition to the

28

1   negotiations that ended in settlements, Cascades has previously admitted that RPX
2   members Dell and Pantech have engaged in separate negotiations with Cascades over
3   Elbrus patents.  Dkt. No. 1 at ¶ 36.  Cascades no longer even attempts to claim those
4   negotiations were not genuine attempts to resolve the patent litigations.[2]

5         As before, Cascades' sole basis for claiming HTC, Samsung, and Motorola have
6   conspired is that each of them (as well as LG) did not accept a January 2012 offer of
7   settlement.  Amended Compl. ¶ 41; *see* Dkt. No. 1 at ¶ 36.  The offer would have
8   required the settling defendant to provide Cascades with $5 million in litigation funding.
9   Amended Compl. ¶ 41.  The settling defendant would then have the possibility of
10  recouping an amount equal to 25% of any further settlements Cascades extracted in its
11  litigation campaign.  *Id.*  If Cascades failed to obtain substantial further licenses (by, for
12  example, losing the remaining Illinois cases), there would be little or no recoupment.  *Id*.

13        HTC, Samsung, and Motorola have each made counterclaims in the Illinois
14  litigation seeking declaratory judgments that the '750 patent is invalid and/or not
15  infringed by the devices each company makes.  *See, e.g.*, HTC's First Amended Answer
16  & Counterclaims, 11-cv-6235, Dkt. No. 63, Counterclaims at ¶¶ 6-20 (N.D. Ill. Apr. 16,
17  2012); Samsung's Answer & Counterclaims, 11-cv-6235, Dkt. No. 52, Counterclaims at
18  ¶¶ 8-15 (N.D. Ill. June 12, 2012); Defendant Motorola's Answer & Counterclaim, 11-cv-
19  4574, Dkt. No. 50, Counterclaims at 16-18. Significantly, moreover, they (along with all
20  other patent defendants in Illinois) have sought dismissal of Cascades' cases for lack of
21  subject-matter jurisdiction in light of the revelation in discovery that Cascades does not
22  even own the patents at issue or hold substantially all rights in them and, so, lacks
23  standing to sue on them.  *See Cascades Computer Innovation, LLC v. Dell Inc.*, 11-cv-
24  7264, Dkt. Nos. 68 & 69 (N.D. Ill. Feb. 4, 2013) (motion to dismiss and brief by Dell);

---

27  [2]   Indeed, Cascades has dropped Dell as a defendant in this case even though Dell continues to
      vigorously contest the Illinois patent litigation.

1  11-cv-6232, Dkt. No. 88 (N.D. Ill. Feb. 18, 2013) (supplemental brief by all other

2  defendants); 11-cv-4574, Dkt. No. 88 (N.D. Ill. Feb. 18, 2013) (same).

3  **III.   ARGUMENT**

4        A Rule 12(b)(6) motion to dismiss should be granted where a plaintiff fails to

5  allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550

6  U.S. at 547.  "Threadbare recitals of the elements of a cause of action, supported by mere

7  conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

8  (citing *Twombly*, 550 U.S. at 555).  Dismissal without leave to amend is particularly

9  appropriate where, after suffering dismissal of an initial complaint, the plaintiff

10  "present[s] no new facts but only new theories and provide[s] no satisfactory explanation

11  for his failure to fully develop his contentions originally." *William O. Gilley Enters., Inc.*

12  *v. Atl. Richfield Co.*, 588 F.3d 659, 669 n.8 (9th Cir. 2009) (citation omitted).  Cascades'

13  Amended Complaint fails to allege any new facts to support its claim that Manufacturing

14  Defendants engaged in a conspiracy, and the additional facts it does allege show

15  Cascades has no cognizable cause of action.  As such, the Court should dismiss all claims

16  against Manufacturing Defendants with prejudice.

17       **A.   THE AMENDED COMPLAINT STILL FAILS TO ALLEGE A PLAUSIBLE**
            **CONSPIRACY**
18

19       The Supreme Court and Ninth Circuit have clearly held that organizational

20  membership and parallel conduct do not suffice to support a claim of conspiracy.

21  *Twombly*, 550 U.S. at 556-57 & 567 n.12; *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042,

22  1048 (9th Cir. 2008).  "Because conspiracy is an essential element of each of Cascades'

23  claims, each of its claims requires that it plead a plausible conspiracy, and it must do so

24  with the required specificity."  Dkt. No. 93 at 9.  Cascades has failed to heed this Court's

25  instructions, instead persisting in conclusory assertions of conspiracy without pleading

26  any additional facts as to Manufacturing Defendants to support those assertions.  This

27  failure justifies dismissal of all Cascades' claims against Manufacturing Defendants.

28

DEFENDANTS HTC, SAMSUNG, AND MOTOROLA'S                    -9-
JOINT MOTION TO DISMISS
CASE NO. C-12-CV-1143 (YGR)

1        **1.      Cascades' "Horizontal" Conspiracy Allegations are Conclusory and Unsupported**

2

3        Cascades claims Manufacturing Defendants entered a "horizontal conspiracy" not

4   to license the '750 patent from Cascades other than through a jointly-funded deal

5   negotiated by RPX.  Amended Compl. ¶¶ 38(d), 44, 46, & 52-67.  In order to sustain such

6   an allegation, *Twombly*, *Kendall*, and this Court's order on the motions to dismiss the

7   original Complaint require that Cascades allege more than just parallel conduct by

8   Manufacturing Defendants and their membership in RPX.  *See Kendall*, 518 F.3d at 1048

9   ("Appellants failed to plead any evidentiary facts beyond parallel conduct to prove their

10  allegation of a conspiracy.   Accordingly, the district court correctly dismissed the

11  complaint."); Dkt. No. 93 at 10 (noting Cascades' original Complaint "is the sort of

12  generic pleading—alleging misconduct against various defendants without specifics as to

13  the role each played—that was rejected by *Twombly*").  Rather, Cascades was required to

14  provide evidentiary facts that tend to exclude lawful unilateral action by each Defendant.

15  *Twombly*, 550 U.S. at 554; *William O. Giley*, 588 F.3d at 688.

16        In addition to the previously-cited cases with which the Court is now familiar, the

17  Second Circuit's recent decision in *Mayor & City Council of Baltimore v. Citigroup, Inc.*,

18  --- F.3d ---, Nos. 10-0722-cv(L), 10-0867-cv(CON), 2013 WL 791397 (2d Cir. Mar. 5,

19  2013), provides further support for dismissal here.  The case concerned allegations that

20  several major financial institutions conspired with each other to stop purchasing auction

21  rate securities (ARS), resulting in the collapse of the ARS market.  *Id*. at *1.  Rather than

22  reaching the complex preemption issue the district court had relied on, the Second Circuit

23  found it could affirm dismissal of the complaint on the alternate ground that it failed to

24  allege a plausible conspiracy.  The plaintiffs in that case attempted to rely on the near

25  simultaneous withdrawal of the defendant firms from the ARS market, assertions about

26  the defendants' motives to conspire, and certain internal communications from certain

27  defendants showing they were aware of what the others were doing.  *Id*. at *7-*8.

28

1  Finding that the allegations presented "merely presume a conspiracy from parallel
2  action," the court affirmed dismissal of the complaint. *Id*. at *8. Thus, the *Mayor of*
3  *Baltimore* case, like *Twombly*, *Kendall*, and multiple other cases before it, rejected
4  precisely the type of pleading Cascades has done here.

5        The fatal defect is that the amended allegations against Manufacturing Defendants
6  still amount to no more than organizational membership and parallel conduct. This is
7  confirmed by paragraph 50 of the Amended Complaint, which reads:

8
9        In addition to this parallel behavior [refusing to accept the January 2012
         offer], the three manufacturing defendants have written agreements with
10       RPX, have agreed to refuse to independently discuss licensing with
         Cascades, have agreed either to fund licenses as a group or not to fund at all
11       and have agreed to negotiate only through RPX. No individual license
         counteroffer was made to Cascades by any of the three manufacturing
12       defendants.

13  Amended Compl. ¶ 50.

14       In other words, Cascades' basis for making conspiracy allegation amounts to 1)
15  the fact that Manufacturing Defendants did not accept the January 2012 settlement offer,
16  2) the fact that Manufacturing Defendants have membership agreements with RPX, 3)
17  Cascades' threadbare assertion that a conspiracy exists, and 4) the lack of a counteroffer
18  from any Manufacturing Defendant. Cascades' allegation that Manufacturing Defendants
19  "agreed to negotiate only through RPX" is nothing more than an inference that Cascades
20  has drawn from the alleged parallel conduct. No facts are alleged about the form or
21  circumstances of the inferred agreement. Moreover, Cascades asserts that it has pled
22  more than parallel behavior by alleging organizational membership and more than
23  organizational membership by alleging parallel behavior. The Court has already rejected
24  that circular reasoning and should do so again.

25       Moreover, analysis of the allegations as to each individual Manufacturing
26  Defendant shows no support for Cascades' conspiracy allegations:

27
28

- *HTC*:   The Amended Complaint makes absolutely no allegations whatsoever specific to HTC, let alone allegations sufficient to suggest HTC has participated in any conspiracy.

- *Samsung*:  The Amended Complaint's only allegation specific to Samsung is that it has a DRAM business to which Elbrus patents other than the '750 patent are relevant.  Amended Compl. ¶ 46.  No inference of conspiracy can be drawn from such an allegation.  If anything, this allegation might suggest that Manufacturing Defendants were differently situated and had disparate interests.

- *Motorola*:  The Amended Complaint's only allegation specific to Motorola is that a Motorola employee told Cascades in September 2011 (when Cascades and RPX appeared to be close to a deal) that Motorola "would like to resolve this" through the pending Cascades-RPX deal.  *Id*. ¶ 32.  That single-line alleged statement quoted in the Amended Complaint reflects a *unilateral* determination by Motorola, suggesting only that Motorola preferred to see how the current Cascades-RPX negotiations played out.  Even if true, that preference would not establish a conspiracy with other Manufacturing Defendants to refrain from individual license negotiations

- *Manufacturing Defendants*:   As to the group, Cascades fails to allege that Manufacturing Defendants ever communicated with one another.

By not providing *any* details as to the role *any* individual Manufacturing Defendant played in the supposed "conspiracy," Cascades' Amended Complaint continues to fail to "answer the basic questions: who, did what, to whom (or with whom), where, and when?"   *Kendall*, 518 F.3d at 1048.   There is just no factual support whatsoever in the Amended Complaint for the supposed "horizontal" conspiracy between Manufacturing Defendants, and Cascades' claims should accordingly be dismissed.

### 2.      Membership in RPX is Not "Conspiracy"

Cascades also alleges a purported "vertical" conspiracy between Manufacturing Defendants and RPX.  Amended Compl. ¶¶ 38(a)-(c), 40, 43, 44, 46, 68-71.  But the sole basis for this allegation is the fact that Manufacturing Defendants are RPX members who would lose the benefits of RPX membership if they left RPX, together with Cascades' assertion (without any supporting facts) that Manufacturing Defendants agreed to fund the proposed Cascades-RPX deal.  *Id.* ¶ 38(a)-(c).  The mere fact that an RPX member had a membership agreement with RPX and agreed to fund a potential deal does not establish an agreement to boycott Cascades under *Kendall*.

In *Kendall*, the plaintiffs attempted to support their claim that a series of banks conspired with each other and their credit card consortiums to fix interchange fees with the following allegations:

> (1) each Bank defendant "participates in the management of and has a proprietary interest in" the Consortiums; (2) the Banks charge appellants "the amount of the interchange rate fixed by the Consortiums as the merchant discount fee"; (2) the Banks adopt the interchange fees set by the Consortiums; (3) the acquiring banks "knowingly, intentionally and actively participated in an individual capacity with the Consortiums in charging the fixed minimum merchant discount fees"; and (4) there is an agreement among all financial institutions to charge a minimum merchant discount fee set by the Consortiums.

518 F.3d at 1048.  The Ninth Circuit found these allegations insufficient as a matter of law to support the allegation of a price fixing conspiracy.

Cascades alleges even fewer facts than the *Kendall* plaintiffs did.  In that case, the plaintiffs at least alleged some facts as to the banks' participation in the operation of the consortiums.  Here, by contrast, Cascades only alleges that Manufacturing Defendants had membership agreements with RPX and agreed to fund a potential deal.  Amended Compl. ¶ 38(a)-(c).   Those allegations do not even come close to presenting the "evidentiary facts" necessary to raise an inference of conspiracy.  *See Kendall*, 518 F.3d at 1048; *accord AD/SAT v. Associated Press*, 181 F.3d 216, 234 (2d Cir. 1999) ("[A]n antitrust plaintiff must present evidence tending to show that association members, in

1   their individual capacities, consciously committed themselves to a common scheme

2   designed to achieve an unlawful objective.").

3        The Amended Complaint fails to identify any specific meetings, communications,

4   or other conduct among Manufacturing Defendants and RPX, let alone show that the

5   content of any communications supports an inference of a conspiracy.   Indeed, it

6   identifies only one meeting concerning the Elbrus patents: a meeting between RPX and

7   Pantech.   Amended Compl. ¶ 34.   Cascades has not named Pantech in this suit, has

8   admitted Pantech engaged in separate licensing negotiations with Cascades, and makes

9   no allegations as to the content of the meeting. *See* Dkt. No. 1 ¶ 36.   Accordingly, that

10   meeting cannot support the "vertical" conspiracy allegations Cascades seeks to pursue.

11        Therefore, the "vertical" conspiracy allegations essentially boil down to the claim

12   that RPX attempted to negotiate a licensing deal and Cascades refused to license on terms

13   RPX's members could accept, so the deal fell through.   That is not a "conspiracy" but

14   simply an ordinary failed business negotiation.   Cascades cannot rely on such tenuous

15   allegations to create an inference of conspiracy where "the circumstances giving rise to

16   this lawsuit plausibly suggest nothing more than a tactical ploy to regain economic

17   leverage that Plaintiff lost in the licensing negotiations."  Dkt. No. 93 at 20.  Cascades'

18   "vertical" conspiracy claims thus fare no better than its "horizontal" conspiracy claims

19   and should be dismissed with them.

20        **3.**     **The "Conspiracy" Allegations Still Make no Economic Sense**

21        An antitrust conspiracy allegation, to be plausible, must make economic sense.

22   *See* Dkt. No. 93 at 19-20; *William O. Gilley*, 588 F.3d at 662.  *See generally Twombly*,

23   550 U.S. at 565; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587

24   (1986).  Dismissal of conspiracy claims is appropriate where the conduct alleged "is at

25   least as likely to be explained by 'lawful . . . free-market behavior' as by anticompetitive

26   agreements."  *MedioStream, Inc. v. Microsoft Corp.*, 869 F. Supp. 2d 1095, 1104 (N.D.

27   Cal. 2012) (citation omitted); *accord Matsushita*, 475 U.S. at 588 (facts "must show that

28

1    the inference of conspiracy is reasonable in light of the competing inferences of

2    independent action or collusive action that could not have harmed [the plaintiffs]").

3           Cascades still fails to offer *facts* that would establish that the parallel conduct

4    alleged derives from a conspiracy rather than independent decisions by each

5    Manufacturing Defendant.   Rather, Cascades' assertions regarding Manufacturing

6    Defendants' economic interests are the type of allegations that the Supreme Court has

7    instructed lower courts to disregard. *See Iqbal*, 556 U.S. at 679 (allegations that "are no

8    more than conclusions, are not entitled to the assumption of truth").   For example,

9    paragraph 38(e) of the Amended Complaint recites a laundry list of conclusory claims

10   about Manufacturing Defendants' purported "knowledge," but provides no facts to

11   support it.  Such unsupported assertions do nothing to render Cascades' allegations more

12   plausible.

13          Moreover, the conduct alleged here is just as (if not more) consistent with each

14   alleged conspirator acting in its own self-interest in allowing the RPX negotiations to

15   take their course and then refusing to license an over-valued patent.  The failure of the

16   RPX negotiations, assuming Cascades' telling is correct, occurred because the price

17   Cascades was charging was too high to induce acceptance by RPX's membership.

18   Amended Compl. ¶ 34 ("[W]e aren't in a position where we can pay more for something

19   than what our clients value it at.").   The fact that RPX and Cascades could not reach

20   agreement on pricing terms does not imply any sort of "conspiracy," but just that the

21   parties had differing assessments of the value of the patents.

22          Likewise, the refusal to accept or counter Cascades' January 2012 settlement offer

23   would just as logically imply that no Manufacturing Defendant viewed it as a reasonable

24   settlement position as that they had all conspired not to accept it.  Cascades offers no

25   facts in its Amended Complaint to suggest that Manufacturing Defendants believe

26   Cascades will win its patent suits.  A perfectly plausible inference from the facts alleged

27   is that Manufacturing Defendants each believed that the potential rebate on the settlement

28

1    was illusory as Cascades could lose its patent suits or fail to secure further settlements.[3]

2    Cascades offers no reason why Manufacturing Defendants would have any reason to

3    think they would see substantial rebates off their $5 million payment.

4         Indeed, the alternative inference that Cascades has overvalued its patents is borne

5    out by the low settlement values achieved with LG and Philips and that it has failed to

6    license its patents to any other party despite its attempts to do so. *See* Amended Compl.

7    ¶¶ 42, 48, & 51.  While Cascades makes a cursory attempt to blame Manufacturing

8    Defendants for the low settlement values it obtained, Cascades does not allege that it has

9    had greater success negotiating with non-RPX members.   Nothing in Cascades'

10   allegations contradicts the obvious, economically rational explanation for Cascades'

11   market failings: potential licensees simply do not view its claims as sufficiently strong to

12   justify substantial license payments.  *In re Travel Agent Comm'n Antitrust Litig.*, 583

13   F.3d 896, 908 (6th Cir. 2009) (affirming dismissal where "each defendant had a

14   reasonable, independent economic interest in adopting" the strategy at issue).

15        Moreover, the potent remedies provided by patent law make a conspiracy not to

16   license a valid and infringed patent extraordinarily risky and therefore implausible.  *See*

17   *Universal Grading Serv. v. eBay, Inc.*, No. C-09-2755 RMW, 2012 WL 70644, at *5

18   (N.D. Cal. Jan. 9, 2012) (dismissing conspiracy claim where alleged conspiracy was

19   "highly unlikely to succeed"); *see also* 35 U.S.C. §§ 283-85.  The most plausible

20   inference from a refusal to license a patent is that the alleged infringer does not believe

21   the allegations made against it are correct.  Once again, Cascades' Amended Complaint

22   does nothing to exclude this entirely plausible inference that the alleged conduct is the

23   result of individual decisions by individual actors rather than a conspiracy.

24

25   _____

26   [3]   Importantly, the Court need not make a presumption either way as to whether this assessment
          is correct.   Even if the Court presumes Cascades will ultimately prevail in the patent
27        litigation, nothing in Cascades' Amended Complaint provides any facts supporting an
          inference that Manufacturing Defendants actually believe Cascades will succeed.

28

DEFENDANTS HTC, SAMSUNG, AND MOTOROLA'S                    -16-
JOINT MOTION TO DISMISS
CASE NO. C-12-CV-1143 (YGR)

**B.     CASCADES FAILS TO PLEAD AN ANTITRUST VIOLATION**

Even if Cascades had alleged sufficiently an agreement among RPX and Manufacturing Defendants to deal (or not deal) jointly with Cascades – which it has not, as just explained – its Amended Complaint would still be insufficient because it fails to allege an unreasonable restraint of trade.  Cascades has not alleged a "restraint," let alone an unreasonable one; and even if it had, its allegations do not suffice to show unreasonableness under either the *per se* rule or the rule of reason.

### 1.     No restraint

The Amended Complaint makes clear that membership in RPX did not preclude its members from negotiating separately with Cascades; in fact, that is precisely what both Phillips and LG did.   Amended Comp. ¶ 42.   Without a bar to independent negotiation, the cases make clear that there is no restraint at all, let alone one that could be characterized as unreasonable.

The Supreme Court's decision in *Broadcast Music, Inc. v. CBS,* 441 U.S. 1 (1979), held that jointly-negotiated music rights, in the form of a blanket license, were not subject to per se liability even though the blanket licenses were literally agreements on price among direct competitors.  After the Supreme Court remanded the *Broadcast Music* case for a rule of reason analysis, the Second Circuit pointed out: "In this case, however, we are met with the threshold contention of the defendants that the balancing of pro- and anti-competitive effects need not be undertaken because [the lower court's] findings of fact demonstrate that the blanket license *has no anti-competitive effect at all." CBS, Inc. v. ASCAP,* 620 F.2d 930, 934 (2d Cir. 1980) (emphasis added).   Focusing on the acknowledged ability of members of BMI and ASCAP to negotiate individually if they chose, the court "examine[d] the record and [the lower court's] findings to see whether the blanket license, on its face and as applied, is a restraint *at all." Id.* at 935 (emphasis added).  The court ordered summary judgment for defendants because "the opportunity to acquire a pool of rights does not restrain trade if an alternative opportunity to acquire

1  individual rights is fully available." *Id.* at 936; *accord Buffalo Broad. Co. v. ASCAP*, 744

2  F.2d 917, 924-26, 933 (2d Cir. 1984) ("[S]ince the blanket license restrains no one from

3  bargaining over the purchase and sale of music performance rights, it is not a restraint

4  unless it were proven that there are no realistically available alternatives."); *see also*

5  *Mularkey v. Holsum Bakery Inc.*, 146 F.3d 1064, 1065 (9th Cir. 1998) (no *per se*

6  violation where "agreement . . . did little, if anything, to restrict the actions of . . .

7  distributors"); *Mesirow v. Pepperidge Farm Inc.*, 703 F.2d 339, 343 (9th Cir. 1983)

8  (distributors were "free to solicit" other business); *Ohio-Sealy Mattress Mfg. Co. v. Sealy,*

9  *Inc.*, 585 F.2d 821, 837 (7th Cir. 1978) ( "[a]ny licensee was free not to participate, and

10  to negotiate directly with the customer in an attempt to supply all or any part of the

11  customer's needs").

12         By admitting RPX members could engage in independent negotiations, Cascades

13  renders it impossible to infer the existence of any restraint at all from its factual

14  allegations.  As such, its claims should be dismissed for the additional reason that it has

15  failed to allege facts establishing a restraint of trade.  *See Twombly*, 550 U.S. at 555

16  (defining pleading standards in light of summary judgment and post-trial precedent).

17                    **2.     No unreasonable restraint or monopsonization**

18         Even if Cascades had alleged an agreement among Manufacturing Defendants not

19  to exercise their right to negotiate separately – which Cascades most certainly has not –

20  such an agreement would not be unreasonable.  The facts alleged make clear that the per

21  se rule is inapplicable and that there is no unreasonable restraint under the rule of reason.

22         ***No per se violation.***  *Per se* condemnation is reserved for "naked restraints" of

23  trade – that is, restraints not "justified by plausible arguments" that they enhance

24  efficiency.  *See Nw. Wholesale Stationers v. Pac. Stationery & Printing Co.,* 472 U.S.

25  284, 294 (1985); *Leegin Creative Leather Prods. v. PSKS, Inc.*, 551 U.S. 877, 886-87

26  (2007).  The practice must be one that "will so often prove so harmful to competition and

27  so rarely prove justified that the antitrust laws" can condemn it without further analysis.

28

1   *NYNEX Corp. v. Discon, Inc.*, 525 U.S. 128, 133 (1998).  *See generally Adaptive Power*

2   *Solutions, LLC v. Hughes Missile Sys. Co.*, 141 F.3d 947, 950 (9th Cir. 1998) ("the

3   category of activities comprising group boycotts is not to be expanded indiscriminately")

4   (citation omitted).

5           The Supreme Court's decision in *Northwest Wholesale Stationers* establishes that

6   joint purchasing – or, as here, joint licensing – is not automatically subject to antitrust

7   condemnation.  The Court applauded the fact that the joint purchasing group allowed

8   members to "effectively purchase supplies at a price significantly lower than . . .

9   nonmembers," 472 U.S. at 286, and recognized the group's "achiev[ment of] economies

10  of scale in purchasing" as an important precompetitive efficiency.  *Id.*  The Court

11  therefore concluded that "such cooperative arrangements would seem to be designed to

12  increase economic efficiency and render markets more, rather than less, competitive." *Id.*

13  at 295.  *Per se* liability was rejected accordingly.  *Id.*; *accord N. Jackson Pharm., Inc. v.*

14  *Caremark RX, Inc.*, 385 F. Supp. 2d 740, 750-51 (N.D. Ill. 2005) (rejecting *per se*

15  analysis for common purchasing agent on the pleadings).

16          Those same considerations counsel dismissal here.  "Whether a plaintiff's alleged

17  facts comprise a *per se* claim is normally a question of legal characterization that can

18  often be resolved by the judge on a motion to dismiss or for summary judgment." *In re*

19  *ATM Fee Antitrust Litig.*, 554 F. Supp. 2d 1003, 1010 (N.D. Cal. 2008) (quoting *Stop &*

20  *Shop Supermarket Co. v. Blue Cross & Blue Shield of R.I.*, 373 F.3d 57, 61 (1st

21  Cir.2004)), *aff'd on other grounds*, 686 F.3d 741 (9th Cir. 2012).  Accordingly, courts

22  routinely reject application of the *per se* rule on the pleadings.  *See e.g., NYNEX*, 525

23  U.S. at 133-39 (rejecting *per se* rule on motion to dismiss); *Eastern Food Servs. v.*

24  *Pontifical Catholic Univ.*, 357 F.3d 1, 5 (1st Cir. 2004) (same); *Reyn's Pasta Bella, LLC*

25  *v. Visa U.S.A., Inc.*, 259 F. Supp. 2d 992, 1000 (N.D. Cal. 2003) (same).

26          The conduct challenged in Cascades' Amended Complaint has sufficient plausible

27  efficiencies to preclude application of the *per se* rule.  The "conspiracy" here is simply a

28

1    "conspiracy" to ensure global peace for RPX members vis-à-vis Cascades' portfolio of

2    Elbrus patents, and to achieve the kind of economies of scale in purchasing that

3    *Northwest Wholesale Stationers* specifically approved.  *See* Amended Complaint ¶ 36.

4    Had the negotiations succeeded in this case, both Cascades and the RPX members it has

5    sued would have been spared significant expense.  Indeed, Cascades admits that similar

6    RPX negotiations led to successful resolutions of patent claims many times between 2008

7    and 2011.  *Id.* ¶ 101.  Such a reduction of transaction/negotiation costs as well as

8    litigation costs benefits all parties and competition as a whole.  Thus, an agreement

9    among Manufacturing Defendants to license through RPX, rather than individually, if

10   such an agreement existed, would promote quick, efficient, and broad-based resolution of

11   PAE claims.

12           These facially apparent efficiencies make it proper to reject the *per se* rule even at

13   the pleading stage, for *per se* illegality only applies where a challenged restraint has

14   "predictable and pernicious anticompetitive effect" with "limited potential for

15   procompetitive benefit" so as to justify categorical condemnation.  *State Oil Co. v. Khan*,

16   522 U.S. 3, 10 (1997).

17           ***Failure to define a relevant market.***  Aside from the claimed *per se* violations of

18   Sherman Act Section 1, all of Cascades' remaining antitrust claims, including its Section

19   2 claim, require definition of a relevant market.  *Thurman Indus., Inc. v. Pay 'N Pak*

20   *Stores, Inc.*, 875 F. 2d 1369, 1373-74 (9th Cir. 1989); Dkt. No. 93 at 14-15.  An antitrust

21   complaint must contain sufficient facts to establish that the proposed relevant market is

22   plausible.  *See Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1337-39 (11th Cir.

23   2010) (applying *Twombly* plausibility standard to relevant market allegations).  "Where

24   the plaintiff fails to define its proposed relevant market with reference to the rule of

25   reasonable interchangeability and cross-elasticity of demand, . . . the relevant market is

26   legally insufficient and a motion to dismiss may be granted."  *Queen City Pizza, Inc. v.*

27   *Domino's Pizza, Inc.*, 124 F.3d 430, 436 (3d Cir. 1997).

28

DEFENDANTS HTC, SAMSUNG, AND MOTOROLA'S           -20-
JOINT MOTION TO DISMISS
CASE NO. C-12-CV-1143 (YGR)

1    Cascades' purported relevant product market is limited to a particular basket of

2  patents, the '750 patent and the other Cascades patents, with a single-patent sub-market

3  for the '750 patent.  Amended Compl. ¶ 92 & 94.  Cascades offers no factual allegations

4  in support of this market definition, limiting its product market allegations to two

5  conclusory paragraphs.  *Id.*

6    Without supporting factual allegations, this purported market definition is

7  implausible.  "In general, a manufacturer's own products do not themselves comprise a

8  relevant product market."  *Apple, Inc. v. Psystar Corp.*, 586 F. Supp. 2d 1190, 1198 (N.D.

9  Cal. 2008) (quoting *Green Country Food Market, Inc. v. Bottling Group*, 371 F.3d 1275,

10  1282 (10th Cir. 2004)).   The Supreme Court held in *Illinois Tool Works Inc. v.*

11  *Independent Ink, Inc.*, 547 U.S. 28 (2006), that a patent cannot be presumed to confer

12  market power.  *Id.* at 45-46 ("Congress, the antitrust enforcement agencies, and most

13  economists have all reached the conclusion that a patent does not necessarily confer

14  market power upon the patentee.  Today, we reach the same conclusion . . . .").  That

15  holding forecloses any presumption that a single patent or basket of patents could be a

16  relevant market.  *Psystar*, 586 F. Supp. 2d at 1197 n.3.  Thus, in order to sustain such a

17  market definition, Cascades must allege facts overcoming the presumption against a

18  single firm's products constituting a relevant antitrust market.

19    Yet the Amended Complaint makes no such allegations.  It contains no facts

20  concerning reasonable interchangeability, cross-elasticity of demand, or any other factors

21  needed to establish the relevant product market.  *See Brown Shoe Co. v. United States*,

22  370 U.S. 294, 325 (1962); *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1476 (9th Cir. 1997).

23  There is no discussion of rival patents or technologies or why they are not reasonable

24  substitutes.  Where, as here, plaintiffs have failed to allege facts supporting an asserted

25  market definition, courts have not hesitated to dismiss their claims.  *See Agnew v. NCAA*,

26  683 F.3d 328, 345-47 (7th Cir. 2012); *Jacobs*, 626 F.3d at 1337-39; *Queen City*, 124 F.3d

27  at 437-43; *Psystar*, 586 F. Supp. 2d at 1195-1203.  Cascades' Section 1 rule of reason and

28

1  Section 2 claims should thus be dismissed in light of Cascades' continuing failure to

2  allege a plausible product market.

3     **C.   CASCADES' STATE LAW CLAIMS FAIL WITH ITS FEDERAL CLAIMS**

4        This Court has held that Cascades' Cartwright Act and California Unfair

5  Competition Law claims rise or fall with its federal claims.   Dkt. No. 93 at 23-24.

6  Cascades conceded as much in its earlier briefing.   Dkt. No. 82 at 22.   The state law

7  claims should accordingly be dismissed with the federal claims.

8     **D.   THE AMENDED COMPLAINT CONFIRMS DEFENDANTS' ALLEGED
       CONDUCT IS IMMUNE FROM ANTITRUST SCRUTINY UNDER THE *NOERR-***

9     ***PENNINGTON* DOCTRINE**

10        The *Noerr-Pennington* doctrine protects joint litigation activity from scrutiny

11  under federal antitrust law, including joint defense conduct and decisions of whether or

12  not to settle.   Dkt. No. 93 at 22; *see also Freeman*, 410 F.3d at 1185; *Columbia Pictures*,

13  944 F.2d at 1528-29.   It also bars state law claims attacking such conduct.   *Theme*

14  *Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1006-07 (9th Cir. 2008).   *Noerr-*

15  *Pennington* immunity is a threshold issue, and the burden is on Cascades to plead facts

16  rebutting its applicability.   *See Or. Natural Res. Council v. Mohla*, 944 F.2d 531, 533 (9th

17  Cir. 1991) ("[A] complaint must include allegations of the specific activities which bring

18  the defendant's conduct into one of the exceptions to *Noerr-Pennington* protection.")

19  (citation and quotations omitted); *Kottle v. Nw. Kidney Ctrs.*, 146 F.3d 1056, 1063 (9th

20  Cir. 1998).

21        Even if a "conspiracy" had been adequately alleged, Cascades' claims should still

22  be dismissed under the *Noerr-Pennington* doctrine, as the Amended Complaint

23  definitively establishes that the alleged "group boycott" cannot have arisen until after the

24  filing of the Illinois cases.   Cascades sued Manufacturing Defendants on July 6, 2011 and

25  September 7, 2011, but had brought suit against other RPX members as early as June 26,

26  2011.   Amended Compl. ¶ 103.   The negotiations with RPX began in earnest in late

27  September 2011 and continued through November 2011.   *Id.* ¶¶ 31-36.   The offer of

28

1   settlement Cascades relies on for its conspiracy allegations occurred in January 2012.  *Id.*

2   ¶ 41.  All of these events occurred after the filing of the Illinois complaints, and they all

3   therefore reflect conduct responsive to Cascades' lawsuits.

4          The conduct is therefore squarely within the scope of immunity recognized by the

5   Ninth Circuit in *Columbia Pictures*, where the court rejected an antitrust claim premised

6   on a collective refusal to settle copyright claims, observing:

7          A decision to accept or reject an offer of settlement is conduct incidental to
       the prosecution of the suit and not a separate and distinct activity which
8      might form the basis for antitrust liability. Consequently, PRE's ability to
       establish that the Movie Studios' refusal to deal violated the Sherman Act
9      depends on its success or failure in showing that the copyright infringement
       action is actionable under the federal antitrust laws.
10

11  944 F.2d at 1528-29.

12         Likewise here, the decision to accept or reject a licensing offer from Cascades

13  under the circumstances described in the Amended Complaint was a decision whether or

14  not to settle Cascades' patent claims.  In order to premise an antitrust suit on such

15  conduct, Cascades would need to show the defense of the claims as a whole was a sham.

16  *Id.  See also Freeman*, 410 F.3d at 1185.  Cascades has not even attempted to allege that

17  the defense of the patent litigations is a sham, despite its duty to rebut the applicability of

18  *Noerr-Pennington* at the pleading stage.  *See Kottle*, 146 F.3d at 1063 (noting

19  "heightened pleading standard" for challenging protected conduct).  Its claims against

20  Manufacturing Defendants should accordingly be dismissed because they are immune

21  under *Noerr-Pennington*.

22         Cascades makes conclusory allegations that Manufacturing Defendants and RPX

23  had discussed the Elbrus patents before its lawsuits but offers no details to support these

24  threadbare allegations.  *Id*. ¶¶ 106-107; *cf. Iqbal*, 556 U.S. at 679 (allegations that "are no

25  more than conclusions, are not entitled to the assumption of truth").  Even if there had

26  been communications prior to the filing of the complaint, they still would have been

27  protected by the *Noerr-Pennington* doctrine.  *See Sosa v. DirectTV, Inc.*, 437 F.3d 923,

28

DEFENDANTS HTC, SAMSUNG, AND MOTOROLA'S                    -23-
JOINT MOTION TO DISMISS
CASE NO. C-12-CV-1143 (YGR)

933-39 (9th Cir. 2006) (conduct in anticipation of litigation protected).   Moreover, by Cascades' own allegations, the market harmed by the alleged conduct is the market for the Elbrus patents from Cascades.   Amended Compl. ¶¶ 92 & 94.   Thus, general allegations concerning the RPX business model and Manufacturing Defendants' participation in it have no relevance to the *Noerr-Pennington* doctrine.   All conduct identified by Cascades as harming the alleged market is conduct post-dating the Illinois complaints and, therefore, conduct protected by *Noerr-Pennington*.   *See RealNetworks, Inc. v. DVD Copy Control Ass'n*, Nos. C 08-4548 MHP, C 08-4719 MHP, 2010 WL 145098, at *5 (N.D. Cal. Jan. 8, 2010).

The Court denied Manufacturing Defendants' initial motion to dismiss under *Noerr-Pennington* based on "Cascades' failure to plead the necessary specifics of the alleged conspiracy." Dkt. 93 at 23. But that denial was without prejudice, and now the "specifics" relevant to *Noerr-Pennington* (including the timing of the negotiations and the litigation in Illinois) have been provided. Dismissal is warranted accordingly.

### E.   CASCADES' CLAIMS SHOULD BE DISMISSED WITH PREJUDICE

Cascades has now had a second opportunity to plead facts supporting its claims and has failed to do so despite the Court's clear admonition.   *See* Dkt. No. 93 at 9 ("Because conspiracy is an essential element of Cascades' claims, each of its claims requires that it plead a plausible conspiracy, and it must do so with the required specificity.").   Indeed, its counsel conceded at the hearing on Manufacturing Defendants' original motion to dismiss that Cascades has no further facts supporting its claims against Manufacturing Defendants.   *See* Dkt. No. 92, at 19:18-20:18.   Accordingly, leave to amend would be futile, and the claims against Manufacturing Defendants should be dismissed with prejudice.   *See In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 546 F.3d 981, 990 (9th Cir. 2008) ("A court properly exercises its discretion in denying leave to amend if the proposed amendment would be futile.").

1    Moreover, the *Noerr-Pennington* doctrine renders all of the challenged conduct

2  immune from antitrust scrutiny. *Freeman*, 410 F.3d at 1185-86. Amendment would

3  accordingly be futile. *See RealNetworks*, 2010 WL 145098, at *8 ("[G]ranting leave to

4  amend would sanction an exercise in futility."). For this additional reason, the claims

5  against Manufacturing Defendants should be dismissed with prejudice.

6  **IV.    CONCLUSION**

7    For the foregoing reasons, Manufacturing Defendants' motion to dismiss should

8  be granted in all respects and all claims asserted against Manufacturing Defendants in the

9  Amended Complaint should be dismissed with prejudice.

10
11  Respectfully submitted,

12  Dated: March 20, 2013                WILSON SONSINI GOODRICH & ROSATI
13                                       Professional Corporation

14                                       /s/ Jonathan M. Jacobson
15                                         Jonathan M. Jacobson
                                           jjacobson@wsgr.com
16
17                                       Attorneys for Defendant
                                         HTC Corporation

18
19  Dated: March 20, 2013                /s/ Michael W. Scarborough
                                           Michael W. Scarborough
20                                         mscarborough@sheppardmullin.com
                                         Sheppard Mullin Richter &
21                                       Hampton LLP
                                         Four Embarcadero Center, 17th Floor
22                                       San Francisco, CA 94111-4106
                                         Telephone: (415) 434-9100
23                                       Facsimile: (415) 434-3947

24                                       Attorneys for Defendant
                                         Samsung Electronics Co., Ltd.
25

26

27

28

DEFENDANTS HTC, SAMSUNG, AND MOTOROLA'S          -25-
JOINT MOTION TO DISMISS
CASE NO. C-12-CV-1143 (YGR)

1  Dated:  March 20, 2013                    /s/ Gene Crew

2                                               Gene Crew
                                             gcrew@kilpatricktownsend.com
3                                            Kilpatrick Townsend & Stockton LLP
                                             Two Embarcadero Center
                                             Eighth Floor
4                                            San Francisco, CA 94111
                                             Telephone:  (415) 576-0200
5                                            Facsimile:  (415) 576-0300

6                                            Attorneys for Defendant
                                             Motorola Mobility, Inc.
7

8                        **SIGNATURE ATTESTATION**

9          In accordance with General Order 45(X), I hereby attest that I have obtained the

10   concurrence of Michael W. Scarborough and Gene Crew in the filing of this document.

11

12                                           /s/ Jonathan M. Jacobson

13                                           Jonathan M. Jacobson

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28