*Counsel listed on signature pages*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| CASCADES COMPUTER INNOVATION LLC,<br><br>Plaintiff,<br><br>v.<br><br>RPX CORPORATION; HTC CORPORATION; and SAMSUNG ELECTRONICS, CO., LTD.<br><br>Defendants. | Case No. 4:12-cv-01143 YGR<br><br>**JOINT STATUS STATEMENT**<br><br>Date:     June 20, 2014<br>Time:    9:01 a.m.<br>Judge:   Hon. Yvonne Gonzalez Rogers<br>Location: Courtroom 5 |

1  Pursuant to the Court's March 4, 2014 Order Staying Case (Docket No. 133) (the "Stay
2  Order"), the parties respectfully submit this joint statement to update the Court on the status of
3  related patent litigation pending in the Northern District of Illinois, and state the parties' respective
4  positions on whether the stay of proceedings in this action through July 2, 2014 should be
5  extended or lifted.

**Joint Summary of Progress in the N.D. Illinois Patent Actions**

Cascades' patent cases against Samsung and HTC remain consolidated for pre-trial purposes and continue to proceed as described by the Court in its Stay Order. Fact discovery closed as scheduled on April 30, 2014, with the exception of depositions of two percipient witnesses, which were completed in May. (N.D. Ill. Case No. 1:11-cv-04574 ("N.D. Ill."), Dkt. No. 159). Initial expert reports were served on May 21, 2014. Rebuttal expert reports remain due on June 25, 2014, and expert depositions must be completed by July 30, 2014. (N.D. Ill., Dkt. Nos. 151, 152). All dispositive motions must be filed by August 27, 2014. (*Id.*)

One early summary judgment motion has been filed. On January 29, 2014, Cascades entered into a license agreement with Google Inc. and Motorola Mobility regarding the '750 patent . On March 26, 2014, the parties filed a Second Supplemental Joint Status Report (N.D. Ill., Dkt. No. 153), in which the defendants stated their intention to file a joint motion for summary judgment asserting that, as a result of Cascades' license agreement with Google and Motorola, Cascades has exhausted its rights to enforce the '750 patent against the defendants' use of the Google Android Operating System (the "Exhaustion Motion"). Cascades contends that the license agreement expressly excludes HTC and Samsung Android Products from the scope of the license and does not exhaust Cascades' rights of enforcement against Samsung and HTC. Following a status hearing on April 7, 2014, the Court ordered that the briefing of the exhaustion motion be conducted on an earlier schedule than other dispositive motions. (N.D. Ill., Dkt. No. 155). Accordingly, defendants' exhaustion motion was filed on April 29, 2014 (N.D. Ill., Dkt. Nos. 156 [sealed version] & 157 [public redacted version]), Cascades' opposition brief was filed on May 27, 2014 (N.D. Ill., Dkt. No. 169), and defendants' reply brief was filed on June 10, 2014

-1-

(N.D. Ill., Dkt. No. 176).  The parties are currently scheduled to appear for a status hearing on July 16, 2014, at which time the exhaustion motion may be addressed.  (N.D. Ill., Dkt. No. 166).

### Plaintiff's Statement Regarding Continued Stay of this Antitrust Case

An extension of this Court's March 4, 2014 Order staying this case is not only prejudicial to the plaintiff, it is contrary to public policy.  As an example of RPX's continued misconduct, after an infusion of $500,000 in cash from Apple, RPX unsuccessfully attempted to use a Patent Office procedure known as an *Inter Partes* Review ("IPR") to circumvent a $368 million judgment against another co-conspirator Apple (see attached article *Patent Troll on the Verge of Winning 1 Percent of iPhone Revenue*, June 6, 2014, Joseph Mullin) (Exhibit A).  So, while this case remains stayed, RPX continues its illegal practices with other co-conspirators, to the detriment of the public.

The Supreme Court has long recognized that the public interest is an important component of the federal antitrust laws:

> Antitrust laws in general, and the Sherman Act in particular, are the Magna Carta of free enterprise. They are as important to the preservation of economic freedom and our free-enterprise system as the Bill of Rights is to the protection of our fundamental personal freedoms.

*United States v. Topco Assocs.*, 405 U.S. 596, 610 (1972); *see also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 652 (1985) ("The Sherman and Clayton Acts, reflect Congress' appraisal of the value of economic freedom; they guarantee the vitality of the entrepreneurial spirit.  Questions arising under these Acts are among the most important in public law.").

This public interest is served by the *private* pursuit of antitrust claims like this one because private suits vindicate the public interest in competition and thereby further public policy.  *See*, *e.g.*, *Perma Life Mufflers, Inc. v. International Parts Corp.*, 392 U.S. 134, 139, 147 (1968) (antitrust law "encourages [plaintiff's] suit to further the overriding public policy in favor of competition").  Indeed, the Clayton Act provides private treble damage and private injunctive

relief remedies precisely for the purpose of encouraging injured firms to act as "private attorneys general" so as to protect the public's interest in competition.  *See*, *e.g.*, *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 130-31 (1969) ("the purpose of giving private parties treble and injunctive relief remedies was not merely to provide private relief, but was to serve well the high purpose of enforcing the antitrust laws" and to protect "the public interest"); *Hawaii v. Standard Oil Co.*, 405 U.S. 251, 262 (1972) ("By offering potential litigants the prospect of a recovery in three times the amount of their damages, Congress encouraged these persons to serve as 'private attorneys general'"); *Reiter v. Sonatone Corp.*, 442 U.S. 330, 344 (1979) ("Congress created the treble damages remedy … precisely for the purpose of encouraging *private* challenges to antitrust violations.  In *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 745-46 (1977), the Supreme Court reiterated its "longstanding policy of encouraging vigorous private enforcement of the antitrust laws" and concluded that giving antitrust standing to directly injured private parties would further "the legislative purpose in creating a group of 'private attorney generals' to enforce the antitrust laws."  An indefinite stay of this case undermines the public's interest in competition policy and allows RPX's anticompetitive conduct to continue unabated.

        Further, final resolution of the pending Chicago patent cases (whenever that happens) will not moot this case because RPX is not a party to those cases and its participation in the conspiracy is not rendered immune from liability because one or more of its co-conspirators settles or is found not to infringe.  *Summit Health, Ltd. v. Pinhaus*, 500 U.S. 322, 330 (1991) ("[T]he essence of any violation of § 1 is the illegal agreement itself…").  Thus, even if the Illinois court were to grant summary judgment of patent exhaustion, the decision would have no bearing on the defendants' liability in this action or on the resultant antitrust injury suffered by Cascades.  The Motorola agreement was executed in January of this year, more than two years after the conspiracy forming the basis for this case began; it cannot retroactively eliminate the defendants' liability for their actions leading up to the Motorola agreement.  Nor does the agreement somehow eliminate the injury to Cascades caused by the defendants' prior conduct, as defendants contend.  In fact, the

-3-

SMRH:424979289.1
Case No. 4:12-cv-1143 YGR

JOINT STATUS STATEMENT

1   Motorola agreement only constitutes additional evidence of the defendants' continued conspiracy
2   to drive down the price of the '750 patent.
3       The boycott of the Elbrus patents is unlawful regardless of whether the patents are found to
4   be invalid or not infringed.  An individual defendant could decide for itself that the patents are
5   invalid and/or not infringed and decline to license the patents.  But, potential licensees, who
6   compete against each other in a relevant product market, cannot lawfully decide to boycott the
7   patents and jointly refuse to take licenses.  If the patents turn out to be invalid or uninfringed in the
8   Illinois case, that might impact damages from a boycott.  But the boycott itself remains illegal.  A
9   contrary holding would authorize licensees to boycott any patent issued by the PTO prior to it
10  being held invalid and not infringed.  In addition, and most importantly, not all of the 28 boycotted
11  patents are at issue in the Chicago lawsuit (including U.S. Patent No. 6,366,130, which is
12  infringed by Samsung).  So, no matter what happens in that case, the illegal impact of the boycott
13  exists.
14      In addition, there is substantial prejudice to Cascades from a continued stay.  Cascades
15  brought this suit more than two years ago, on March 7, 2012; it has twice amended its complaint,
16  finally defeated RPX's motion to dismiss and, on the eve of important discovery, faces an
17  indefinite delay.  That delay causes memories to fade, third-party documents to be lost, and allows
18  RPX to continue its illegal acts, in violation of the antitrust laws. In light of these concerns, the
19  Ninth Circuit disfavors stays, especially those that are lengthy or indefinite.  *Dependable Highway*
20  *Express, Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066-67 (9th Cir. 2007) (explaining that
21  lengthy or indefinite stays are disfavored); *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112-13 (9th
22  Cir. 2005) (finding that neither the balance of hardships between the parties nor the prospect of
23  narrowing the factual and legal issues in the other proceeding justifies a stay); *see also Otey v.*
24  *Crowdflower, Inc.*, 2013 U.S. Dist. LEXIS 65813, at *4 (N.D. Cal. May 8, 2013) (requiring
25  moving party to make a ***strong showing*** as to why discovery should be denied by establishing a
26  specific need for a stay).  No further stay should be permitted.

-4-

SMRH:424979289.1
Case No. 4:12-cv-1143 YGR

JOINT STATUS STATEMENT

1    Finally, in the event the Court decides to grant another stay (which we oppose), Cascades
2    requests leave to at least permit limited discovery in the form of narrowly tailored document
3    requests.  Such requests would not unduly burden defendants.   Specifically, Cascades would
4    request that the Court direct the defendants to produce the following categories of documents
5    under Fed. R. Civ. P. 34:

6    1. All communications between RPX and any current or previous defendant in the '750 patent cases (including Samsung and HTC) relating to Cascades, Anthony Brown, the '750 patent, the Elbrus patent portfolio, the '750 patent cases currently or previously pending in the Northern District of Illinois, or the present litigation.

10   2. All communications between Samsung and any other current or prior defendant in the current or prior Northern District of Illinois patent cases relating to Cascades, Anthony Brown, the '750 patent, the Elbrus patent portfolio, the '750 patent cases currently or previously pending in the Northern District of Illinois, or the present litigation.

15   3. All communications between HTC and any other current or previous defendant in the current or prior Northern District of Illinois patent cases relating to Cascades, Anthony Brown, the '750 patent, the Elbrus patent portfolio, the '750 patent cases currently or previously pending in the Northern District of Illinois, or the present litigation.

20   4. All agreements and contracts between RPX and any current or previous defendant in the '750 patent cases, including HTC and Samsung.

**Defendants' Statement Regarding A Further Stay of the Antitrust Proceedings**

For all of the same reasons identified by the Court in its original Stay Order, the defendants respectfully submit that the stay of proceedings in this action should be extended by at least 120 days, at which time the propriety of maintaining the stay may be reevaluated.

First, the Court has already ruled that, because the patent defendants' non-infringement and invalidity defenses have "the potential to narrow substantially, or moot entirely, the antitrust issues

1   now before this Court," (Stay Order at 2:23-24), "[t]he most efficient course in this matter is to
2   resolve validity and infringement issues before pivoting to Plaintiff's antitrust case." (Stay Order
3   at 5:16-17).  The Court has further observed that dispositive motions in patent cases frequently
4   resolve such issues.  (Stay Order at 4:4-8).  As noted, all dispositive motions remain due to be
5   filed in the patent cases by August 27, 2014.  (*See* N.D. Ill., Dkt. No. 151).  A 120-day extension
6   of the existing stay of this case, until early November, would thus allow a reasonable amount of
7   time—slightly more than two months—for those motions to be fully briefed, heard, and decided.
8   Without such an extension, the efficiencies identified by the Court in allowing the invalidity and
9   non-infringement issues to be decided first, "before pivoting to Plaintiff's antitrust case," would be
10  lost.

11  　　　　Second, Cascades' recent license agreement with Google and Motorola, and the patent
12  court's decision to fast-track the defendants' resulting Exhaustion Motion, provide yet another
13  basis on which the resolution of the patent cases may moot or streamline this antitrust action.  If
14  the patent court grants the Exhaustion Motion by ruling that Cascades' license agreement with
15  Google precludes Cascades from enforcing the '750 patent against downstream Android users
16  such as Samsung and HTC, then Cascades could have suffered no injury or damages from
17  defendants' supposed conspiracy to refuse to license an unenforceable patent, and its antitrust
18  claims based on the '750 patent will be rendered moot.  *See Jones Knitting Corp. v. Morgan*, 244
19  F. Supp. 235, 239 (E.D Pa. 1965) (*overruled on other grounds by* 361 F.2d 451 (3d Cir. 1966)) (no
20  injury from alleged antitrust conspiracy where underlying patent found invalid); *Sony Elecs., Inc.*
21  *v. Soundview Techs., Inc.*, 281 F. Supp. 2d 399, 402-03 (D. Conn. 2003) (no injury from alleged
22  antitrust conspiracy where patent was not infringed).  Thus, the probability that the resolution of
23  the patent cases will affect the scope of this case has already materially increased during just the
24  short time the stay has been in effect.

25  　　　　Cascades is simply incorrect that its antitrust case could proceed based on an invalid or
26  non-infringed patent, on the theory that the alleged boycott would "remain illegal."  In addition to
27  proof of an antitrust violation, Cascades cannot prevail unless it establishes the essential elements
28

-6-

SMRH:424979289.1
Case No. 4:12-cv-1143 YGR

JOINT STATUS STATEMENT

of injury and damages—something it cannot do if the underlying patent is valueless.  *See, e.g., J. Truett Payne Co. v. Chrysler Motors Corp.*, 451 U.S. 557, 562 (1981); *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 486 (1977) (to recover on a private antitrust claim a plaintiff must prove more than an antitrust violation, "since such proof establishes only that injury may result").

Moreover, while this case nominally involves Elbrus patents other than the '750 patent, Cascades alleges in its Complaint that the only patent "the manufacturer defendants specifically needed access to and were using was the '750 patent," and Cascades has only pleaded injury from its alleged inability to license the '750 patent as to devices using Google's Android operating system.  *See* Amended Complaint, ¶¶ 19, 92-100.  Cascades makes no relevant allegations with respect to other patents other than alleging that Defendants wanted any license to cover all of Cascades' patents.  Thus, as this Court has already observed, the '750 patent is at a minimum the "primary patent at issue" in this case.  *See, e.g.*, Dkt. No. 93 at 21:18-21; Stay Order at 3:20-22 ("In this case, as Defendants aptly remark, if the Illinois litigation determines that Plaintiff's '750 Patent is invalid, any damage stemming from a refusal to negotiate a license under that patent may well prove to be illusory.").

Third, Cascades makes allegations above concerning an *inter partes* review ("IPR") action that RPX initiated as to patents that are not at issue in this case.  Cascades' aspersions are unfounded, and in any event irrelevant: the law limits any relief that Cascades could obtain in this case to its own supposed injuries in the alleged relevant market (namely, licenses for the '750 patent).  *See Somers v. Apple, Inc.*, 729 F.3d 953, 963 (9th Cir. 2013) (private plaintiff may only seek redress of injuries to markets in which it participates); *Or. Laborers-Emp'rs Health & Welfare Trust v. Philip Morris Inc.*, 185 F. 3d 957, 966-67 (9th Cir. 1999) (same). Furthermore, Congress created  the IPR procedure, pursuant to the America Invents Act, to subject asserted patents to scrutiny. The Supreme Court holds that testing the validity of asserted patents, as RPX has done, serves the public interest. *See Fed. Trade Comm'n v. Actavis, Inc.*, 133 S. Ct. 2223, 2233 (2013) (emphasizing "the patent-related policy of eliminating unwarranted patent grants so

-7-

the public will not 'continually be required to pay tribute to would-be monopolists without need or justification'") (quoting *Lear, Inc. v. Adkins*, 395 U.S. 653, 670 (1969)).

<u>Fourth</u>, the existing stay has not unfairly prejudiced Cascades, and nor would the proposed extension. The patent cases are on the same aggressive schedule they have been on since February, and there is no reason to believe an extension of the stay would cause unreasonable delay. The Court has already rejected, and should reject again, Cascades' recycled assertions that the proposed limited extension of the stay would be "indefinite," or would cause evidence to be lost. (Stay Order at 4:11-12) (the Court notes that the stay entered here is not one of "indefinite" duration); (*id.* at 5:1-4) ("Plaintiff's fourth and final prejudice argument is that the stay will result in lost evidence due to fading memories and witness unavailability. The Court disagrees. The stay contemplated here is brief. A concern for loss of evidence exists anytime a court issues a stay and does not supply sufficient grounds to refrain from issuing an otherwise appropriate stay.")

Moreover, the fact that Cascades unsuccessfully moved the patent court to stay all other proceedings in the patent cases pending resolution of the defendants' Exhaustion Motion belies any suggestion by Cascades that time is of the essence. (*See* N.D. Ill., Dkt. No. 155). Ostensibly, Cascades believes that at least one of the patent defendants' dispositive motions could meaningfully impact the scope of further litigation between the parties. It should not be heard to argue otherwise here.

<u>Finally</u>, Cascades' alternative requests for expansive document discovery should be rejected. Far from being "limited" and "narrowly tailored," Cascades' requests encompass virtually all of the discovery to which Cascades might arguably be entitled in this action (assuming such discovery ever becomes necessary) and would require defendants to undertake expensive searches for electronically stored information. *See In re Lithium Ion Batteries Antitrust Litig.*, 2013 WL 2237887, at *2 (N.D. Cal. May 21, 2013) ("antitrust discovery can be enormously expensive and burdensome.") (J. Gonzalez Rogers); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Further, Cascades apparently intends to seek documents that are protected by the joint defense and common interest privileges, meaning discovery motion practice may be

necessary.  In short, requiring the parties to undertake such an inherently complex and costly discovery process—at a time when it is unclear whether Cascades' antitrust suit has any merit—would seriously undermine the efficiency of the stay.  *See, e.g.*, *Masimo Corp. v. Philips Elecs. N. Am. Corp.*, 2010 WL 925864, at *3 (D. Del. March 11, 2010) (staying antitrust action pending result of patent litigation because "the court is cognizant of the need to prevent the parties from conducting discovery that will ultimately prove unnecessary"); *accord Apotex v. Senju Pharmaceutical Co., Ltd.*, 921 F. Supp. 2d 308, 315 (D. Del. 2013).  Given that a finding of invalidity, non-infringement, or unenforceability of the '750 patent could moot all of Cascades' proposed discovery by depriving Cascades of standing to pursue its antitrust claims, the Court should not allow Cascades to pursue its requests until the Illinois patent litigation is resolved.

Dated:   June 13, 2014                                Respectfully submitted,

                                                     */s/ Ashley E. LaValley*
                                                     NIRO, HALLER & NIRO
                                                     Raymond P. Niro (Member of the N.D. Cal. Bar)
                                                     Daniel R. Ferri (*Pro Hac Vice*)
                                                     Gabriel I. Opatken (*Pro Hac Vice*)
                                                     Ashley LaValley (*Pro Hac Vice*)
                                                     181 West Madison, Suite 4600
                                                     Chicago, IL 60602-4515
                                                     Phone: (312) 236-0733
                                                     Fax: (312) 236-3137
                                                     E-mails: rniro@nshn.com; dferri@nshn.com;
                                                     gopatken@nshn.com; alavalley@nshn.com

                                                     DAVIS WRIGHT TREMAINE LLP
                                                     MARTIN L. FINEMAN, Bar No. 1104413
                                                     505 Montgomery Street
                                                     Suite 808
                                                     San Francisco, CA 94111
                                                     Telephone: (415) 276-6575
                                                     Facsimile: (415) 276-6599
                                                     Email: martinfineman@dwt.com

                                                     Attorneys for Plaintiff
                                                     *Cascades Computer Innovation LLC*

| | |
|---|---|
| 1 | SHEPPARD, MULLIN, RICHTER & HAMPTON LLP |
| 2 | 4 Embarcadero Center, 17th Floor |

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
4 Embarcadero Center, 17th Floor
San Francisco, CA  94111
Telephone:  (415) 434-9100
Facsimile:  (415) 434-3947
mscarborough@sheppardmullin.com


By     _/s/ Michael W. Scarborough_
              MICHAEL W. SCARBOROUGH

              Attorneys for Defendant
        SAMSUNG ELECTRONICS CO., LTD.


WILSON SONSINI GOODRICH & ROSATI P.C.
1301 Avenue of the Americas
New York, NY 10019
Telephone:  (212) 999-5800
Facsimile:   (212) 999-5899
jjacobson@wsgr.com


By     _/s/ Jonathan M. Jacobson_
              JONATHAN M. JACOBSON

              Attorneys for Defendant
                 HTC CORPORATION


LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, California 94111-6538
Telephone:  (415) 391-0600
Facsimile:  (415) 395-8095
alfred.pfeiffer@lw.com


By     _/s/ Alfred C. Pfeiffer, Jr._
              ALFRED C. PFEIFFER, JR.

              Attorneys for Defendant
                RPX CORPORATION

-10-

## E-FILING ATTESTATION

I, Michael W. Scarborough, am the ECF User whose ID and password are being used to file this document.  In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the signatories identified above has concurred in this filing.

*/s/ Michael W. Scarborough*
Michael W. Scarborough
