DAVIS WRIGHT TREMAINE LLP
MARTIN L. FINEMAN, Bar No. 1104413
505 Montgomery Street, Suite 800
San Francisco, CA 94111
Telephone: (415) 276-6575
Fax: (415) 276-6599
Email: martinfineman@dwt.com

NIRO, HALLER & NIRO
Raymond P. Niro (Member of the N.D. Cal. Bar)
Daniel R. Ferri (*Pro Hac Vice*)
181 West Madison, Suite 4600
Chicago, IL 60602
Telephone: (312) 236-0733
Fax: (312) 236-3137
E-mail: rniro@nshn.com
E-mail: dferri@nshn.com

*Attorneys for Plaintiff*
*Cascades Computer Innovation LLC*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| CASCADES COMPUTER INNOVATION LLC,<br><br>                   Plaintiff,<br><br>     v.<br><br>RPX CORPORATION; MOTOROLA MOBILITY LLC; and SAMSUNG ELECTRONICS CO. LTD.,<br>                   Defendants. | Case No. 4:12-cv-1143 (YGR)<br><br>The Honorable Yvonne Gonzalez Rogers<br><br>Magistrate Judge Donna M. Ryu<br><br>**PLAINTIFF CASCADES COMPUTER INNOVATION'S OPPOSITION TO DEFENDANTS' JOINT MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Date:     December 15, 2015<br>Time:    2:00 p.m.<br>Judge:   Hon. Yvonne Gonzalez Rogers<br>Location: Courtroom 1 |

PLAINTIFF CASCADES COMPUTER INNOVATION'S OPPOSITION TO DEFENDANTS' JOINT MOTION FOR JUDGMENT ON THE
PLEADINGS – CASE NO. 4:12-cv-1143 YGR

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................................ 1

II. THE AMENDED COMPLAINT CONSISTENTLY
ADDRESSES ALL THE CASCADES PATENTS ............................................................ 1

III. LEGAL STANDARD FOR THE GRANT OF
JUDGMENT ON THE PLEADINGS ................................................................................ 3

IV. THE PLEADINGS, IF TAKEN AS TRUE, SHOW A
VIOLATION OF SECTION 1 OF THE SHERMAN ACT ................................................ 3

    A. Cascades Has Pled All The Elements Necessary To Establish
An Antitrust Violation Under A "Rule Of Reason" Analysis ................................. 3

    B. Cascades' Claim Makes "Economic Sense" ............................................................ 6

V. THE CASCADES MONOPSONY ALLEGATIONS
DO NOT DEPEND SOLELY ON THE '750 PATENT ...................................................... 7

VI. CASCADES HAS STANDING .......................................................................................... 8

    A. Defendants' Conduct Injured Competition
In The Market For The '130 Patent ......................................................................... 9

    B. Defendants' Conduct Injured Competition In
The Market For All Of The Cascades Patents ........................................................ 9

    C. Defendants' Conduct Injured Competition
In The Market For The '750 Patent ......................................................................... 9

VII. THE JURY DECISION OF NON-INFRINGEMENT
OF THE '750 PATENT DOES NOT PRECLUDE
LICENSING AND ENFORCEMENT AGAINST OTHERS ........................................... 11

VIII. CONCLUSION ................................................................................................................. 12

PLAINTIFF CASCADES COMPUTER INNOVATION'S RESPONSE TO DEFENDANTS' JOINT MOTION FOR JUDGMENT ON THE PLEADINGS – CASE NO. 4:12-cv-1143 YGR

i

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adaptive Power Solutions, LLC v. Hughes Missile Sys. Co.*,
   141 F.3d 947 (9th Cir. 1998) ............................................................................................... 6

*Blonder Tongue v. University of Illinois Found.*,
   402 U.S. 313 (1971) ........................................................................................................... 12

*Fleming v. Pickard*,
   581 F.3d 922 (9th Cir. 2009) ............................................................................................... 3

*Glen Holly Entm't, Inc. v. Tektronix Inc.*,
   343 F.3d 1000 (9th Cir. 2003) ......................................................................................... 8, 10

*Jones Knitting Corp. v. Morgan*,
   244 F. Supp. 235 (E.D. Pa. 1965) ..................................................................................... 8, 9

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) ........................................................................................................... 6, 7

*MGIC Indem. Corp. v. Weisoman*,
   803 F.2d 500 (9th Cir. 1986) ............................................................................................... 9

*Nat'l Collegiate Athletic Assn. v. Bd. Of Regents of Univ. of Okla.*,
   468 U.S. 85 (1984) ............................................................................................................... 4

*Nystrom v. Trex Co.*,
   580 F.3d 1281 (Fed. Cir. 2009) ......................................................................................... 11

*Oltz v. St. Peter's Comm. Hosp.*,
   861 F.2d 1440 (9th Cir. 1988) ........................................................................................ 3, 4

*Sony Elcs., Inc. v. Soundview Techs., Inc.*,
   281 F. Supp. 2d 399 (D. Conn. 2003) ............................................................................ 8, 10

*Todd v. Exxon Corp.*,
   275 F.3d 191 (2d Cir. 2001) ................................................................................................ 4

**Statutes**

15 U.S.C. § 1 ............................................................................................................................ 3, 4, 6

35 U.S.C. § 282 ............................................................................................................................... 9

PLAINTIFF CASCADES COMPUTER INNOVATION'S RESPONSE TO DEFENDANTS' JOINT MOTION FOR JUDGMENT ON THE PLEADINGS – CASE NO. 4:12-cv-1143 YGR – CASE NO. 4:12-cv-1143 YGR

- ii -

**I.     INTRODUCTION**

Defendants claim that U.S. Patent No. 7,065,750 ("the '750 patent") is the only significant patent in the case and, hence, the other 37 Cascades patents are incapable of being subject to a group boycott or concerted refusal to license. (Defs.' Mem., Dkt. 186 at 2.)  That is simply not so.

Among the 38 other Cascades patents is United States Patent No. 6,366,130 ("the '130 patent"). (Amended Complaint, Dkt. 94 at ¶ 11.)  The '130 patent covers important memory devices called DRAM – dynamic random access memory.  Samsung dominates the market for DRAM memory chips.  Together with another RPX member, Hynix Semiconductor, their combined market share has exceeded 65%. *See http://www.statista.com/statistics/271726/global-market-share-held-by-dram-chip-vendors-since-2010/.*  Cascades has sued Samsung for infringement of the '130 patent and that case is by no means insignificant or unimportant.  The price of a license at even a modest 1% royalty could exceed $100 million.

The jury decision on the '750 patent resulted in a finding that the patent was valid and enforceable, but not infringed by Samsung's specific design.  That does not mean that other unlicensed RPX members who make Android-based cellphones do not infringe.  It means only that Samsung's use of a modified version of the Android operating system does not infringe the '750 patent. The jury verdict also does not mean that there was never a market for licenses under the '750 patent, the '130 patent, or any of the other 36 patents in the Cascades portfolio. Rather, the fact that Samsung and the other RPX members banded together to make a significant offer for all the patents shows that there were such markets. (Dkt. 94 at ¶¶ 31-33.)

A judgment on the pleadings is inappropriate, therefore, because ***all*** 38 Cascades patents were subject to the concerted action of RPX and its members, not just the '750 patent.

**II.    THE AMENDED COMPLAINT CONSISTENTLY ADDRESSES ALL THE CASCADES PATENTS**

Cascades' antitrust case is not solely about the '750 patent.  The Amended Complaint repeatedly references all 38 Cascades/Elbrus patents. It alleges that all of the patents "are

PLAINTIFF CASCADES COMPUTER INNOVATION'S RESPONSE TO DEFENDANTS' JOINT MOTION FOR JUDGMENT ON THE PLEADINGS – CASE NO. 4:12-cv-1143 YGR

1

1  extremely valuable, as shown, for example, by the fact that Elbrus granted a license to Intel
2  under *its patents* for a substantial, seven-figure lump-sum payment" (Dkt. 94 at ¶ 11) (emphasis
3  added).  The Amended Complaint alleges that *all* the patents "are subject to the antitrust
4  violations complained of herein (*Id.*) (emphasis added).  It alleges that RPX "negotiated with
5  Cascades to acquire license rights under *all* the Cascades patents …" (*Id.* at ¶ 31) (emphasis
6  added) and that RPX was negotiating "collectively on behalf of its key members for a license
7  under *all* the Cascades/Elbrus patents …" (*Id.* at ¶ 35) (emphasis added).  It was a license "under
8  the *entire* Cascades-Elbrus portfolio" of all 38 patents that RPX and its members required (*Id.* at
9  ¶ 36) (emphasis added).  And, the agreement the Defendants reached implicated *all* the Cascades
10 patents, not just the '750 patent ("… that all would act together to oppose Cascades' efforts to
11 license the '750 *and other Cascades patents*.") (*Id.* at ¶ 39) (emphasis added).  The license
12 Cascades offered was under "*all the Cascades patents*" (*Id.* at ¶ 41) (emphasis added) and the
13 payments made by LG and Philips "were below the reasonable level that a patentee would expect
14 for a license under *the Cascades-Elbrus patents* …" (*Id.* at ¶ 42) (emphasis added).

15       Cascades has alleged that its "efforts to license the *entire portfolio* of Cascades/Elbrus
16 patents have been impacted by the horizontal and vertical combination and conspiracy" (*Id.* at ¶
17 46) (emphasis added). Cascades has alleged that the agreements amongst Samsung, RPX and the
18 other RPX members were made with respect to license rights under *all* of the Cascades Patents
19 (*Id.* at ¶ 38(c).)  Further, the relevant product market specifically includes "the other Cascades
20 patents" (*Id.* at ¶ 92).

21       In short, throughout the Amended Complaint, Cascades consistently references *all* of its
22 patents and the adverse impact the antitrust violations had on its ability to license *all* its patents.
23 (*Id.* at ¶¶ 46, 51, 55, 56, 58, 59, 61, 62, 80, 81, 82, 83, 87.)

24       The Court was correct, therefore, to express skepticism about Defendants' motion:

25       [S]o I am not going to stop the defendants from filing a motion for
26       judgment on the pleadings.

27       I don't know that, frankly, given that the '750 was found to be a valid

28 PLAINTIFF CASCADES COMPUTER INNOVATION'S RESPONSE TO DEFENDANTS' JOINT MOTION FOR JUDGMENT ON THE
PLEADINGS – CASE NO. 4:12-cv-1143 YGR – CASE NO. 4:12-cv-1143 YGR

- 2 -

patent and the '130 is in the complaint, how you expect to get a positive result,

but I'm not going to stop you from filing it.

(Transcript of Proceedings, October 19, 2015, pp. 3-4.)

### III. LEGAL STANDARD FOR THE GRANT OF JUDGMENT ON THE PLEADINGS

Judgment on the pleadings is only proper when "there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Fleming v. Pickard*, 581 F.3d 922, 924 (9th Cir. 2009). In deciding a motion for judgment on the pleadings, all factual allegations in the complaint must be taken as true and construed in the light most favorable to the non-moving party. *Id.* The allegations in the Amended Complaint preclude dismissal under this standard.

### IV. THE PLEADINGS, IF TAKEN AS TRUE, SHOW A VIOLATION OF SECTION 1 OF THE SHERMAN ACT

Section 1 of the Sherman Act prohibits "[e]very contract, combination ... or conspiracy, in the restraint of trade or commerce." 15 U.S.C. § 1. *Oltz v. St. Peter's Comm. Hosp.*, 861 F.2d 1440, 1445 (9th Cir. 1988).

Here, RPX, Samsung and the other RPX members agreed that they would not independently negotiate with Cascades for rights to use its patents and that any license to the Cascades patents would be negotiated only through RPX or not at all. The result, and indeed the purpose, of the concerted action was the elimination of individual companies from the market for rights to the Cascades patents. As a consequence, there was less competition in the market for a license under the Cascades patents and Cascades was forced to engage in licensing negotiations from a position of artificial weakness. Defendants' collective action was a restraint on the market for licenses under the Cascades patents, including the '130 patent, for which there was no possible pro-competitive justification.

#### A. Cascades Has Pled All The Elements Necessary To Establish An Antitrust Violation Under A "Rule Of Reason" Analysis

Whether concerted conduct unreasonably restrains competition under Section 1 of the

PLAINTIFF CASCADES COMPUTER INNOVATION'S RESPONSE TO DEFENDANTS' JOINT MOTION FOR JUDGMENT ON THE PLEADINGS – CASE NO. 4:12-cv-1143 YGR – CASE NO. 4:12-cv-1143 YGR

- 3 -

Sherman Act is normally determined under a "rule of reason" analysis, which is done on a case-by-case basis. *Oltz,* 861 F.2d at 1445. Under such an analysis, the plaintiff must prove three things: (1) an agreement or conspiracy among two or more persons or distinct business entities; (2) by which the persons or entities intend to harm or restrain competition; and (3) which actually injures competition. *Id*. "After the claimant has proven that the conspiracy harmed competition, the fact finder must balance the restraint and any justifications or pro-competitive effects of the restraint in order to determine whether the restraint is unreasonable." *Id.* These are all questions of fact.

"Defining the relevant market is a factual inquiry ordinarily reserved for the jury." *Id.* at 1446. In a situation in which the conspiracy is on the buyer-side (as opposed to the seller-side), "the market is not the market of competing sellers but of competing buyers. This market is comprised of buyers who are seen by sellers as being reasonably good substitutes." *Todd v. Exxon Corp.*, 275 F.3d 191, 202 (2d Cir. 2001) (quoting Blair and Harrison, *Antitrust Policy and Monoposony,* 76 Cornell L. Rev. 297, 324 (1991)).

Defining the market, however, is "not the purpose of antitrust law; it merely aids the search for competitive injury." *Oltz,* 861 F.2d at 1448. "Market definition and market power are merely tools designed to uncover competitive harm." *Id.* Thus, the Supreme Court has explained that under Section 1 of the Sherman Act, regardless of whether a court is applying a *per se* or rule of reason analysis, proof of market power is not required to establish illegal activity:

> As a matter of law, the absence of proof of market power does not justify a naked restriction on price or output. To the contrary, when there is an agreement not to compete in terms of price or output, no elaborate industry analysis is required to demonstrate the anticompetitive character of such an agreement.... We have never required proof of market power in such a case. This naked restraint on price and output requires some competitive justification even in the absence of a detailed market analysis.

*Nat'l Collegiate Athletic Assn. v. Bd. Of Regents of Univ. of Okla.*, 468 U.S. 85, 109-110 (1984).

Cascades has pled facts supporting every element of a violation of Section 1. First, Cascades has identified a ***horizontal*** conspiracy amongst RPX, Samsung, and other RPX members to collectively negotiate for rights to the Cascades patents at an unreasonably low price

PLAINTIFF CASCADES COMPUTER INNOVATION'S RESPONSE TO DEFENDANTS' JOINT MOTION FOR JUDGMENT ON THE PLEADINGS – CASE NO. 4:12-cv-1143 YGR – CASE NO. 4:12-cv-1143 YGR

- 4 -

and to ultimately boycott the licensing of the Cascades patents.  (Dkt. 94 at ¶¶ 52-67; *see also* ¶¶ 21-22, 26-28, 30-40.)  Cascades has also pled a ***vertical conspiracy*** created by RPX's vertical membership agreements through which RPX members relinquished independent decision-making in order to negotiate only through RPX for licenses to the Cascades patents.  (Dkt. 94 at ¶¶ 68-71;  see also ¶¶ 19-23, 26-28, 30-40.)

The Court has already held that Cascades has adequately pled a plausible conspiracy and that the existence of a conspiracy was supported by: (1) Motorola expressly declining, through its representative Brett Roesslein, to engage in individual negotiations with Cascades on the ground that it preferred to negotiate through RPX; (2) RPX, through Kevin Barhydt, representing itself as speaking for all the members collectively; (3) Mr. Barhydt telling Cascades that RPX's "clients" refused to license just an individual patent, but wanted a license to the entire portfolio; (4) none of the RPX members individually responding to Cascades' highly favorable offer for a low-cost license; and (5) RPX advertising its ability to achieve "wholesale" pricing for its members at a price substantially less than if the companies negotiated for patent rights individually. (Dkt. 119 at ¶¶ 14, 17-18.) The existence of concerted action is further supported by the fact that RPX withdrew its high, seven-figure offer for a portfolio-wide license when certain of its members backed out of funding the license acquisition. (Dkt. 94 at ¶ 32.)

Second, the conspiracy identified by Cascades was intended to restrain competition. Its essence was the elimination of individual companies from the market for rights to the Cascades patents. The RPX members agreed not to individually negotiate, but, rather, to consolidate negotiating power in RPX, as admitted by Brett Roesslein of Motorola. (Dkt. 94 at ¶ 32.)  Their decision to do so was in accordance with RPX's advertised promise of achieving "wholesale pricing" for its members and its suggestion that its members should not "pay 'retail' [by] transacting on [their] own." (Dkt. 94 at ¶ 21.)

Third, Defendants' concerted actions harmed competition.  Defendants' buyer-side cartel removed companies from the markets for the Cascades patents and, thus, reduced competition in those markets. As set forth in the Amended Complaint, the elimination of potential licensors in

PLAINTIFF CASCADES COMPUTER INNOVATION'S RESPONSE TO DEFENDANTS' JOINT MOTION FOR JUDGMENT ON THE PLEADINGS – CASE NO. 4:12-cv-1143 YGR – CASE NO. 4:12-cv-1143 YGR

- 5 -

the markets for its patents prevented Cascades "from obtaining royalties and other compensation it would otherwise have received for licenses under the Cascades patents" and forced Cascades to incur the expense of "enforcing the Cascades patents against Defendants and others." (Dkt. 94 at ¶ 73.) As alleged, Cascades was harmed in its "efforts to license the entire portfolio of Cascades/Elbrus patents," including the '130 patent that is being infringed by Samsung's DRAM business. (Dkt. 94 at ¶ 46.) The result of Defendants' cartel was an artificial devaluation of Cascades' patent rights, which has negative effects on Cascades' incentive to innovate and support innovation (Dkt. 94 at ¶¶ 95-97) – the result being less new technology in those markets, and consequently the price of the existing technology in the markets is artificially inflated. (*Id.*)

### B. Cascades' Claim Makes "Economic Sense"

"Economic sense" is not an independent element of an antitrust violation. Rather, courts have simply recognized that summary judgment is appropriate on those claims where the evidence shows that a plaintiff cannot realistically hope to establish certain necessary elements of an antitrust claim because the allegations are contrary to economic sense. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (on **summary judgment**, finding no genuine issue as to the existence of a conspiracy where there was ambiguous evidence of a conspiracy and the alleged conspiracy was economically irrational); *Adaptive Power Solutions, LLC v. Hughes Missile Sys. Co.*, 141 F.3d 947, 952-53 (9th Cir. 1998) (**on summary judgment**, finding no genuine issue as to the injury to competition where defendants' actions were contrary to their own self-interests). As explained by the Supreme Court, "economic sense" is not a separate element, but merely something to consider when weighing the plausibility of a plaintiff's allegations: "[I]f the factual context renders respondents' claim implausible – if the claim is one that simply makes no economic sense – respondents must come forward with more persuasive evidence to support their claim than would otherwise be necessary." *Matsushita Elec.*, 475 U.S. at 587.

Accordingly, this Court initially looked at the question of "economic sense" in the context of whether Cascades had pled sufficient facts to support the existence of a conspiracy, as

1  opposed to mere parallel conduct. (Dkt. 93 at 17-19.) The Court recognized that the Amended
2  Complaint "goes beyond bare assertions of parallel conduct to allege specific facts which, taken
3  together, are suggestive of concerted action." (Dkt. 119 at 17.) The Court then recited the litany
4  of specific factual allegations pled in the Amended Complaint that strongly suggest concerted
5  action on the part of RPX, Samsung, and the other RPX members. (*Id.*) In light of these specific
6  allegations showing a conspiracy, Defendants cannot now have Cascades' claim dismissed on
7  the mere assertion that they did not have "any economically rational motive to 'act together' ...."
8  (Defs.' Mem, Dkt. 186 at 14-15.) When the facts alleged in the Amended Complaint are taken as
9  true and all inferences are drawn in the favor of Cascades, the existence of a conspiracy has been
10 pled.

11     Moreover, it is simply not true, as Defendants claim, that the explanation of why the
12 conspiracy made no economic sense depends entirely on the '750 patent. (Defs.' Mem. at 12-
13 16.) The license offer made by Cascades was under ***all*** the Cascades patents, not just the '750
14 patent. (*see* Amended Complaint, ¶ 41 ("In January 2012, Cascades offered each of Motorola,
15 Samsung and HTC an identical low-priced license that would have required a lump-sum royalty
16 payment of only $5 million for a ***fully paid-up license under all the Cascades patents***."); *see*
17 *also* ¶¶ 36-37 and 42-43). It made no economic sense, therefore, for the parties to refuse a
18 license under all 38 patents for such a modest price, especially for Samsung, which faced
19 enormous liability under the '130 patent. The allegations made in the Amended Complaint relate
20 to all the Cascades patents.

21 **V.  THE CASCADES MONOPSONY ALLEGATIONS DO NOT DEPEND SOLELY**
22 **     ON THE '750 PATENT**

23     The Amended Complaint defines two markets – (1) a relevant product market comprising
24 the '750 patent and "***the other Cascades patents***" (Amended Complaint (¶ 92); and (2) a
25 narrower, relevant submarket for just the '750 patent. (*Id.* at ¶ 94.) Defendants try to read the
26 words "the other Cascades patents" out of the Amended Complaint. The Defendants have
27 market power in relevant markets other than the market for the '750 patent. Specifically, RPX

28

members Samsung and Hynix alone have controlled over 65% of the DRAM market covered by the '130 patent.

## VI. CASCADES HAS STANDING

Antitrust injury is "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants acts' unlawful." *Glen Holly Entm't, Inc. v. Tektronix Inc.*, 343 F.3d 1000, 1008 (9th Cir. 2003). The Ninth Circuit has explained that antitrust injury is that which "flows from an *anticompetitive* aspect of the defendant's behavior. . . . If the injury flows from aspects of the defendant's conduct that are beneficial or neutral to competition, there is no antitrust injury . . . ." *Id.* (quoting *Pool Water Prods. v. Olin Corp.*, 258 F.3d 1024, 1034 (9th Cir. 2001).

The Defendants argue that Cascades lacks standing to bring its antitrust case because one Defendant, Samsung, was found not to infringe the valid and enforceable '750 patent. (Defs.' Mem. at 5-9.) This is incorrect, as Defendants' formation of a buyer-side cartel was anti-competitive conduct that directly harmed Cascades' ability to license not only the '750 patent, but the entire portfolio of valid Cascades patents, including the '130 patent, which Samsung is currently infringing. The result of Defendants' concerted action was the loss of licensing revenue for Cascades. Indeed, the loss of royalties in excess of $100 million that Samsung owes in damages for its infringement of the '130 patent is significant. Defendants cannot reasonably argue that their concerted action did not harm Cascades, as there, in fact, was a high seven-figure offer to Cascades that was withdrawn by RPX due to the concerted conduct of Defendants. (Dkt. 94 at ¶¶ 31-33.)

Because this case involves an entire portfolio of patents for which Defendants wanted a license, this case is fundamentally different from the *Jones Knitting* and *Sony* cases, relied on by Defendants, that involved just a single patent. *See Jones Knitting Corp. v. Morgan*, 244 F. Supp. 235 (E.D. Pa. 1965); *Sony Elcs., Inc. v. Soundview Techs., Inc.*, 281 F. Supp. 2d 399 (D. Conn. 2003).

PLAINTIFF CASCADES COMPUTER INNOVATION'S RESPONSE TO DEFENDANTS' JOINT MOTION FOR JUDGMENT ON THE PLEADINGS – CASE NO. 4:12-cv-1143 YGR – CASE NO. 4:12-cv-1143 YGR

- 8 -

### A. Defendants' Conduct Injured Competition In The Market For The '130 Patent

The complaint makes clear that "[t]hough the '750 patent is the primary Cascades/Elbrus patent presently of interest to the defendants (*Samsung infringes at least one other patent relating to the DRAM business*), *efforts to license the entire portfolio of Cascades/Elbrus patents* have been impacted by the horizon and vertical combination and conspiracy among the defendants" (emphasis added). (Dkt. 94 at ¶ 46.) This "one other patent relating to the DRAM business" is the '130 patent identified in paragraph 11 of the Amended Complaint. The Court can take judicial notice of the patent infringement complaint filed in the Northern District of Illinois accusing Samsung of infringing the '130 patent through its sale of DRAM products (Exhibit A). *See MGIC Indem. Corp. v. Weisoman*, 803 F.2d 500, 504 (9th Cir. 1986) (noting that Court can take "judicial notice of matters of public record outside the pleadings" in the context of a motion to dismiss). As a result of the alleged cartel, Samsung was eliminated from the market for rights to the '130 patent, and competition was, thus, injured in this important submarket.

### B. Defendants' Conduct Injured Competition In The Market For All Of The Cascades Patents

The '750 patent has been found valid, and the remainder of the patents in the portfolio are presumed valid under the law. 35 U.S.C. § 282. Accordingly, licenses to these patents are valuable property rights. Kevin Barhydt of RPX told Cascades that its "clients" wanted a license to the entire Cascades patent portfolio. (Dkt. 94 at ¶¶ 35-36.) There was, thus, a defined market for rights to the entire portfolio amongst RPX's members. (*Id.* at ¶¶ 35-37, 92.) That market was harmed by the RPX members insisting upon only negotiating for rights to this portfolio through RPX, and then RPX completely withdrawing its offer for a license to the Cascades portfolio because its members refused to participate in funding the deal. (*Id.* at ¶¶ 31-37.)

### C. Defendants' Conduct Injured Competition In The Market For The '750 Patent

Again, the '750 patent has been found valid. The recent finding of non-infringement does

PLAINTIFF CASCADES COMPUTER INNOVATION'S RESPONSE TO DEFENDANTS' JOINT MOTION FOR JUDGMENT ON THE PLEADINGS – CASE NO. 4:12-cv-1143 YGR – CASE NO. 4:12-cv-1143 YGR

- 9 -

not change the fact that, in 2011, Samsung, RPX, and other RPX members conspired to not independently negotiate for rights to this valid patent.

In *Jones Knitting*, the court stated that the plaintiff could not have suffered any damages because "he did not have a valid patent from which a valid license could stem." *Jones Knitting Corp.*, 244 F. Supp. at 239. The exact opposite is true here, where the '750 patent has been found valid after extensive litigation on the subject. Thus, Cascades would have licensed rights to a valid patent, but for the concerted actions of Samsung, RPX, and the other manufacturers.

In *Soundview*, the court held that "***even if an illegal agreement is proved to be one reason the Non-Soundview Parties refused to license Soundview's patent***, the proximate or legal cause of Soundview's licensing revenue loss is that no television manufacturer ... needed a license of the patent to manufacture televisions." *Soundview Techs*, 281 F. Supp. 2d at 400 (emphasis added). However, if an illegal agreement is proved to be one reason for a plaintiff's harm, ***then there is harm that*** "flows from an anticompetitive aspect of the defendant's behavior," and thus antitrust injury. *Glen Holly*, 343 F.3d at 1008. Here, as alleged, the illegal agreement amongst Samsung, RPX, and the other RPX members is the reason that Cascades could not license this patent. As such, there is antitrust injury with respect to this particular market.

The fact that Samsung was found not to need a license under the '750 patent to cover already-infringing products is not dispositive in this case. In a perfectly healthy, competitive environment, companies would necessarily consider accepting licenses to those patents. It is acceptable, and presumably ideal, for companies to license patents that cover technology they might be practicing at the current time or in the future. This is no different from a more traditional situation of a buyer-side cartel that boycotts a seller's widgets. In such a scenario, it would not be dispositive that the defendant cartel companies did not ***absolutely need*** the widgets. The questions remain whether: (1) there was a market for the widgets; (2) whether competition in that market was harmed; and (3) whether the widget-maker suffered a harm that flowed from the anticompetitive conduct. Here, with respect to the '750 patent, the Court has already found

PLAINTIFF CASCADES COMPUTER INNOVATION'S RESPONSE TO DEFENDANTS' JOINT MOTION FOR JUDGMENT ON THE PLEADINGS – CASE NO. 4:12-cv-1143 YGR – CASE NO. 4:12-cv-1143 YGR

- 10 -

these elements to have been adequately pled.

## VII. THE JURY DECISION OF NON-INFRINGEMENT OF THE '750 PATENT DOES NOT PRECLUDE LICENSING AND ENFORCEMENT AGAINST OTHERS

Infringement is a personal defense based upon the design, operation and structure of the products accused of infringement. Samsung uses a modified Android operating system:

> Q. How is the Android system operating system actually loaded on to Samsung Smartphones?
>
> * * * *
>
> A. So what Google does about – is they target particular parties in going about conducting their early development as to the early versions, and it so happens that that cannot immediately be put on Samsung phones *for it requires such to be appropriately modified to be suitable for Samsung's hardware*.

(Deposition of Hakryoul Kim, April 21, 2014, pp. 81-82) (emphasis added.)

> A. That shows that Samsung source of Android came from Google. And in order to make that work on a Samsung platform, the Samsung engineers had to make a lot of – *they had to adapt that software to their hardware platform*.

(Transcript of Proceedings, July 15, 2015, p. 639) (emphasis added.)

Thus, a finding of non-infringement for the Samsung design does not have a preclusive effect and does not bar a claim against other Android products that were not specially designed like the Samsung design. *See Nystrom v. Trex Co.*, 580 F.3d 1281, 1285 (Fed. Cir. 2009) ("For claim preclusion in a patent case, an accused infringer must show that the accused product or process in the second suit is 'essentially the same' as the accused product or process in the first suit.").

In contrast, a finding of invalidity is *in rem*. It bars all future actions on the invalid patent against all future infringers. *Blonder Tongue v. University of Illinois Found.*, 402 U.S. 313

PLAINTIFF CASCADES COMPUTER INNOVATION'S RESPONSE TO DEFENDANTS' JOINT MOTION FOR JUDGMENT ON THE PLEADINGS – CASE NO. 4:12-cv-1143 YGR – CASE NO. 4:12-cv-1143 YGR

- 11 -

(1971). Here, the '750 patent was twice found valid – the first trial resulted in a mistrial because a paralegal employed by Samsung's counsel improperly gave the jury exhibits that were excluded.

In short, the decision finding non-infringement of a valid patent does not bar Cascades from licensing or enforcing the '750 patent, much less the '130 patent or the other 36 patents in the Elbrus portfolio.

## VIII.   CONCLUSION

Defendants misread the Amended Complaint by ignoring the allegations that RPX and its members engaged in a combination, agreement and conspiracy that impacted Cascades' ability to license all 38 of its patents, not just the '750 patent. Judgment on the pleadings is inappropriate because taking the allegations made as true, judgment cannot be entered for the Defendants as a matter of law.

Dated: November 17, 2015                    Respectfully submitted,

                                            /s/ Raymond P. Niro
DAVIS WRIGHT TREMAINE LLP                   NIRO, HALLER & NIRO
MARTIN L. FINEMAN, Bar No. 1104413          Raymond P. Niro (Member of the N.D. Cal. Bar)
505 Montgomery Street, Suite 808            Daniel R. Ferri (*Pro Hac Vice*)
San Francisco, CA 94111                     181 West Madison, Suite 4600
Telephone: (415) 276-6575                   Chicago, IL 60602
Fax: (415) 276-6599                         Telephone: (312) 236-0733
Email: martinfineman@dwt.com                Fax: (312) 236-3137
                                            E-mails: rniro@nshn.com; dferri@nshn.com

                                            *Attorneys for Plaintiff*
                                            *Cascades Computer Innovation LLC*

PLAINTIFF CASCADES COMPUTER INNOVATION'S RESPONSE TO DEFENDANTS' JOINT MOTION FOR JUDGMENT ON THE PLEADINGS – CASE NO. 4:12-cv-1143 YGR – CASE NO. 4:12-cv-1143 YGR

- 12 -

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that on November 17, 2015 the foregoing

**PLAINTIFF CASCADES COMPUTER INNOVATION'S OPPOSITION TO DEFENDANTS' JOINT MOTION FOR JUDGMENT ON THE PLEADINGS**

was filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to the following counsel of record.

| | |
|---|---|
| Hanno Kaiser<br>Alfred Carroll Pfeiffer, Jr.<br>Aaron T. Chiu<br>LATHAM & WATKINS<br>505 Montgomery Street – Suite 2000<br>San Francisco, CA 94111<br>Phone: (415) 391-0600<br>Emails: Hanno.kaiser@lw.com;<br>Al.pfeiffer@lw.com;  Aaron.chiu@lw.com<br><br>*Attorneys for RPX Corporation*<br><br>Richard L. Grossman<br>Gene Crew<br>Jessica L. Hannah<br>KILPATRICK TOWNSEND & STOCKTON LLP<br>Eighth Floor, Two Embarcadero Center<br>San Francisco, CA  94111<br>Phone:  (415) 576-0200<br>Emails:<br>rgrossman@kilpatricktownsend.com;<br>gcrew@kilpatricktownsend.com;<br>jhannah@kilpatricktownsend.com<br><br>Peter Michael Boyle<br>607 14th Street NW, Suite 900<br>Washington, D.C.  20005<br>Phone:  (202) 508-5831<br>pboyle@kilpatricktownsend.com<br><br>*Attorneys for Motorola Mobility LLC* | Michael W. Scarborough<br>SHEPPARD MULLIN RICHTER & HAMPTON LLP<br>Four Embarcadero Center, 17th Floor<br>San Francisco, CA 94111−4106<br>Phone: (415) 434-9100<br>Emails: mscarborough@smrh.com<br><br>*Attorneys for Samsung Electronics Co. Ltd.* |

I certify that all parties in this case are represented by counsel who are CM/ECF participants.

/s/     Martin L. Fineman
DAVIS WRIGHT TREMAINE LLP
*Attorneys for Plaintiff, Cascades Computer Innovation LLC*

PLAINTIFF CASCADES COMPUTER INNOVATION'S RESPONSE TO DEFENDANTS' JOINT MOTION FOR JUDGMENT ON THE PLEADINGS  – CASE NO. 4:12-cv-1143 YGR  – CASE NO. 4:12-cv-1143 YGR

- 13 -