UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CASCADES COMPUTER INNOVATION LLC,

Plaintiff,

v.

RPX CORPORATION, ET AL.,

Defendants.

Case No.  12-cv-01143-YGR

ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS

Re: Dkt. No. 186

In this antitrust case, plaintiff Cascades Computer Innovation LLC ("Cascades") accuses defendants[1] of anticompetitive conduct in connection with the negotiation of licenses to plaintiff's patent portfolio.[2]  The remaining defendants[3] now move for judgment on the pleadings, arguing plaintiff lacks antitrust standing to maintain this action in light of a September 21, 2015 jury verdict finding Samsung did not infringe the primary patent at issue in this case.  (Dkt. No. 186 ("Mot.").)  Plaintiff opposes the motion on a number of grounds.  (Dkt. No. 190 ("Oppo.").)

---

[1] The First Amended Complaint names four defendants: RPX Corporation ("RPX"), HTC Corporation ("HTC"), Motorola Mobility Holdings, Inc. ("Motorola"), and Samsung Electronics Co. Ltd. ("Samsung").  (Dkt. No. 94 ("FAC").)  The initial complaint also named LG Electronics, Inc. and Dell Inc. as defendants.  (Dkt. No. 1.)  For ease of reference, HTC, Motorola, and Samsung are collectively referred to herein as the "manufacturing defendants."

[2] This suit relates to a portfolio of 38 patents, referred to herein as the "Elbrus portfolio," for which plaintiff holds exclusive licensing and enforcement rights.  (FAC ¶ 11.)  The allegations of the FAC, however, focus on a single patent in the portfolio, U.S. Patent No. 7,065,750 (the "'750 Patent"), entitled "Method and Apparatus for Preserving Precise Exceptions in Binary Translated Code."

[3] Only defendants RPX and Samsung remain in the case.

United States District Court
Northern District of California

Having carefully considered the papers submitted,[4] the record in this case, and the arguments of counsel, and good cause shown, the Court **GRANTS** the motion.

## I.    BACKGROUND

### A.    Procedural History

Plaintiff instituted this action on March 7, 2012.  (Dkt. No. 1.)  After defendants' initial motions to dismiss were granted with leave to amend, plaintiff filed its First Amended Complaint on February 20, 2013.  (Dkt. No. 94.)  Thereafter, defendants moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Dkt. Nos. 98-99.)  The Court denied the motions on December 3, 2013.  (Dkt. No. 119.)

On March 4, 2014, the Court stayed this case pending the resolution of litigation in the Northern District of Illinois wherein plaintiff alleged infringement of the '750 Patent—the primary patent at issue in this dispute—by the manufacturing defendants.  (Dkt. No. 133.)  The Court held that "the Illinois litigation has the potential to narrow substantially, or moot entirely, the antitrust issues now before this Court" because a finding of invalidity of the '750 Patent could render illusory "any damage stemming from a refusal to negotiate a license under that patent."  (*Id*. at 3.)

This antitrust case accuses defendants of anticompetitive behavior in connection with the negotiation of licenses to plaintiff's Elbrus portfolio.  Although the Elbrus portfolio is comprised of 38 patents, all of the specific, non-conclusory allegations in the operative complaint, with the exception of a few passing references, relate to a single patent—namely, the '750 Patent.  Plaintiff separately sued many of the defendants accused in this case for alleged infringement of the '750 Patent in the Northern District of Illinois.  Most settled.  Samsung defended itself through trial and ultimately prevailed, receiving a jury verdict of non-infringement.  *See Cascades Computer Innovation, LLC v. Samsung Electronics Co., Ltd.*, Case No. 11-cv-4574 (N.D. Ill.) ("Illinois

---

[4] The parties request judicial notice of certain public filings in patent infringement cases brought by plaintiff against various manufacturing defendants in the Northern District of Illinois. (Dkt. Nos. 187 ("Defendants' RJN"), 190 at 9.)  The Court **GRANTS** the unopposed requests pursuant to Federal Rule of Evidence 201, which allows a court to take judicial notice of "matters of public record," but not facts contained therein that may be subject to a reasonable dispute.  *See Lee v. City of Los Angeles*, 250 F.3d 668, 689-90 (9th Cir. 2001).

United States District Court
Northern District of California

Samsung Case"), Dkt. No. 420.  The remaining defendants in this case, Samsung and RPX, now move for judgment on the pleadings, primarily on the ground that plaintiff lacks antitrust standing as a result of the jury finding of non-infringement.

### B.    Factual Allegations[5]

In ruling on prior motions to dismiss, the Court detailed the allegations of the FAC.  (*See* Dkt. No. 119 at 1-8.)  In light of the intervening verdict finding Samsung did not infringe the '750 Patent, however, the Court summarizes the salient allegations for purposes of the instant motion.

### 1.    The Parties

Cascades is a non-practicing entity ("NPE"), a company that "enforces patent rights against accused infringers in an attempt to collect licensing fees, but does not manufacture products or supply services based on the patents in question."  *Internet Ad Systems, LLC v. Opodo, Ltd.*, 481 F. Supp. 2d 596, 601 (N.D. Tex. 2007).  Through the provision of financial resources and strategic guidance, Cascades seeks to level the playing field between the "individual inventors" who own patents and the "large multinational corporations with vast resources" who, according to Cascades, commonly infringe them.  (FAC ¶¶ 17-18.)  To that end, Cascades acquired exclusive rights to license and enforce 38 technology patents originally issued to non-party Elbrus International.  (*Id.* ¶¶ 10-11.)[6]

The manufacturing defendants produce mobile devices using the Android operating system, thereby allegedly infringe the '750 Patent.  (*Id.* ¶¶ 6, 13.)  The manufacturing defendants collectively sell more than 90 percent of Android phones and more than 75 percent of Android

---

[5] This subsection simply presents relevant allegations pled in the FAC, which the Court need not accept as true in all circumstances in light of judicially noticed documents submitted in connection with this motion and pursuant to the legal standards provided herein.  *See, e.g.*, *Yang v. Dar Al-Handash Consultants*, 250 F. App'x 771, 772 (9th Cir. 2007).

[6] This allegedly "extremely valuable" portfolio consists of U.S. Patent Nos. 5,418,975, 5,781,924, 5,794,029, 5,889,985, 5,923,871, 5,958,048, 5,983,336, 6,243,822, 6,265,896, 6,301,706, 6,313,691, 6,320,446, 6,323,688, 6,351,155, 6,363,405, 6,366,130 (the "'130 Patent"), 6,373,149, 6,412,105, 6,424,181, 6,516,462, 6,516,463, 6,526,573, 6,549,903, 6,560,775, 6,564,372, 6,567,831, 6,584,611, 6,594,824, 6,668,316, 6,718,541, 6,732,220, 6,751,645, 6,820,255, 6,954,927, 7,003,650, 7,065,750, 7,069,412, 7,143,401 (collectively, the "Elbrus portfolio").

tablets.  (FAC ¶¶ 6, 13, 72, 88.)  Samsung's market share for Android phones is purportedly 17 percent.  (*Id*. ¶ 12.)[7]

RPX styles itself as a defensive patent aggregator, defending its members from allegedly baseless infringement claims from NPEs.  RPX members purportedly pay between $60,000 and $6 million to subscribe for an initial three-year term.  (*Id*. ¶¶ 2, 24.)  Each of the manufacturing defendants is purportedly a member.  Subscriptions give members a license to practice RPX-controlled patents, which number in the thousands.  (*Id*. ¶¶ 2, 20.)  The subscription agreement purportedly gives members "the ability to deal independently in their own self-interest."  (*Id*. ¶ 20.)  In addition to its aggregation role, RPX allegedly acts as a purchasing or negotiating agent for certain of its members.  (*Id*. ¶¶ 2, 20.)  Those members provide financing for the acquisition of rights in certain patents relevant to their businesses.  (*Id*.)  Through this group negotiation mechanism, RPX can purportedly obtain reduced royalty rates for its members, which it refers to as "wholesale" prices.  (*Id*. ¶¶ 19-22.)

### 2. The Negotiation

A key part of the Elbrus portfolio, the '750 Patent—entitled "Method and Apparatus for Preserving Precise Exceptions in Binary Translated Code" and issued on June 20, 2016—is specifically referenced more than *seventy times* in the operative complaint.  By contrast, none of the other Elbrus portfolio patents are specifically mentioned more than once—when the entire set of patents in the portfolio is listed.  Central to the case, the '750 Patent's technology is allegedly used to optimize software applications running on Android, an operative system commonly used in mobile devices such as smartphone and tablets.  (FAC ¶ 47.)

The instant litigation originated in a failed patent license negotiation between Cascades and RPX on behalf of certain of its members.  (*Id*. ¶ 35.)  Cascades asserts the purpose of the purported illegal horizontal agreement was to:

---

[7] Cascades alleges that the manufacturing defendants "*collectively* enjoy substantial market power."  (FAC ¶ 72 (emphasis supplied); *see also id*. ¶ 92 (noting "the three manufacturing defendants dominate [the relevant] market").)  Cascades does not assert that Samsung's share alone is sufficient.

1
2
3
4
5

> (1) combine the purchasing power of manufacturers of mobile electronic devices that utilize the Android operating system with respect to the acquisition of the rights to use **the '750 patented technology**, and (2) acquire a sufficient share of the purchasing power for **the '750 patent** so as to be able to drive the price paid for the use of **the '750 patent** below the rates that would be set by the unfettered competitive market forces or, in the alternative, to have the manufacturing defendants collectively refuse to deal with Cascades at all if Cascades would not meet their joint demand for a license of **the '750 patent** at below a competitive market rate.

6    (FAC ¶¶ 63, 65 (emphasis supplied) (noting "Cascades has been injured . . . by its inability to

7    obtain the competitive market rate for the licensing of its **'750 patent**"); *see also id.* ¶ 76.)

8        Cascades "suggested" RPX negotiate a license solely to the critical '750 Patent, stating the

9    parties should "discuss an exclusive license under just [the '750] patent, forgetting about the entire

10   portfolio," but RPX insisted on negotiating for the entire portfolio to ensure its members would

11   not "hear about Cascades again."  (*Id.* ¶¶ 35-36 (alteration in original).)   After all, "it would make

12   no economic sense for the manufacturing defendants to decline a license under all the

13   Cascades/Elbrus patents effectively for the price of a license under the '750 patent."  (*Id.* ¶ 37.)

14   According to plaintiff:

15
16
17
18
19

> the conduct of each manufacturing defendant in refusing to act in what would be its independent self-interest by individually negotiating a license with Cascades **for the '750 patent**, and instead negotiating only jointly through the common agent RPX, constitutes a tacit agreement among the three manufacturing defendants and RPX to accumulate purchaser-side market power to drive the license fees **of the '750 patent** below the market rate or, in the alternative, to jointly and collectively decline to license **the '750 patent** at all.

20   (*Id.* ¶ 38 (emphasis supplied).)

21       Cascades defines the relevant product market as follows:

22
23
24

> the market for the purchase, acquisition or licensing of technology covered by the Cascades **'750 patent (and, because of the requirements of RPX and the manufacturing defendants, the other Cascades patents)** to manufacturers of mobile phones and tablets that use the Android operating system.

25   (*Id.* ¶ 92 (emphasis supplied).)[8]

26       When the parties failed to reach an agreement on licensing terms, Cascades filed suit

27   _____

28       [8] Cascades asserts a submarket that involves solely the '750 Patent.  (FAC ¶ 94.)

5

against the manufacturing defendants and other RPX members for patent infringement in Illinois and instituted this antitrust action.

## II.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(c), judgment on the pleadings may be granted when, accepting as true all material allegations contained in the nonmoving party's pleadings, the moving party is entitled to judgment as a matter of law. *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012). The applicable standard is essentially identical to the standard for a motion to dismiss under Rule 12(b)(6). *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011). Thus, although the Court must accept well-pleaded facts as true, it is not required to accept mere conclusory allegations or conclusions of law. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79.

In ruling on a motion for judgment on the pleadings, the Court may consider documents incorporated by reference in the pleadings and "may properly look beyond the complaint to matters of public record" that are judicially noticeable. *Mack v. South Bay Beer Distrib., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986), *abrogated on other grounds by Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104 (1991); *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987). The Court "need not . . . accept as true allegations that contradict matters properly subject to judicial notice or by exhibit" attached to the complaint. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (citation omitted). Courts may also dismiss a cause of action in place of granting judgment, and may grant leave to amend where appropriate. *See, e.g.*, *In re Dynamic Random Access Memory (Dram) Antitrust Litig.*, 516 F. Supp. 2d 1072, 1084 (N.D. Cal. 2007).

## III.  DISCUSSION

Defendants seek to apply the doctrine of collateral estoppel as to the non-infringement finding in the Illinois Samsung Case to allegations of infringement of the '750 Patent by (1) Samsung and (2) other manufacturing defendants in the instant case. Once the finding is applied, defendants argue, plaintiff lacks antitrust standing and otherwise fails to state plausible federal antitrust claims for relief. Alternatively, defendants request an order barring plaintiff from seeking

United States District Court
Northern District of California

6

United States District Court
Northern District of California

1  any relief based on the '750 Patent.

2      The Court addresses the application of collateral estoppel and thereafter **GRANTS** the

3  motion, finding a lack of antitrust standing.[9]  Because the Court finds a failure to establish that

4  necessary prerequisite to an antitrust claim, the Court need not address defendants' alternative

5  request.

6      **A.**   **Collateral Estoppel**

7       **1.**   **Samsung**

8      Under collateral estoppel, also known as issue preclusion, "once a court has decided an

9  issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue

10  in a suit on a different cause of action involving a party to the first case."  *Hydranautics v.*

11  *FilmTec Corp.*, 204 F.3d 880, 885 (9th Cir. 2000) (noting collateral estoppel applies where the

12  two issues are identical, the first proceeding ended in a final judgment on the merits, and the party

13  against whom it is asserted was a party to the first action).  Plaintiff apparently concedes, and the

14  Court finds, that collateral estoppel applies at least insofar as non-infringement of the '750 Patent

15  by Samsung is concerned.

16       **2.**   **Other Manufacturing Defendants**

17      While apparently conceding collateral estoppel applies as to Samsung's non-infringement

18  of the '750 Patent, Cascades argues the finding does not apply as to non-infringement by the other

19  manufacturing defendants.[10]  While this argument would typically persuade, here it fails in light of

20  Cascades' theory of infringement, expressed both in its Illinois litigation and in the operative

21  complaint in the instant case.  *See Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*, 476 F. Supp.

22  2d 1143, 1157 (N.D. Cal. 2007) (granting summary judgment in favor of certain defendants on

23  collateral estoppel grounds where the component at issue was previously found non-infringing).

24

25      [9] As noted below, the Court also finds the motion may be granted as to the federal antitrust

26  claims for failure to state a claim in light of the application of collateral estoppel herein.

27      [10] Because plaintiff's allegations of market share center around the manufacturing defendants (*see, e.g.*, FAC ¶ 6), and not the other alleged conspirators, the Court need not address

28  herein whether the non-infringement verdict applies as to the other alleged conspirators.

United States District Court
Northern District of California

1    Namely, Cascades contended in both instances that the Android operating system itself infringes

2    the '750 Patent, and that the manufacturing defendants thereby infringed simply by installing

3    Android on their devices.  (*See, e.g.*, FAC ¶¶ 13, 47; Defendants' RJN, Ex. C at 2 (Cascades

4    acknowledging it has "accused the same Android functionality" installed in both Samsung and

5    HTC devices), Ex. D ¶ 14 (Cascades alleging Motorola devices violate the asserted method claim

6    of the '750 Patent through Android's use of the Dalvik Virtual Machine), and Ex. E at 9 (Cascades

7    recognizing infringement occurs in accused Samsung devices when "the Dalvik Virtual Machine

8    embedded in the phone" is activated).

9           In an apparent attack on the identity prong of collateral estoppel, plaintiff now contends

10   collateral estoppel does not apply as to the other manufacturers because Samsung's

11   implementation of Android was distinct from the implementation of the other manufacturing

12   defendants.  Plaintiff cites only a Federal Circuit decision premised on *res judicata*, not collateral

13   estoppel.  *See Nystrom v. Trex Co.*, 580 F.3d 1281, 1285 (Fed. Cir. 2009) ("For claim preclusion

14   in a patent case, an accused infringer must show that the accused product or process in the second

15   suit is 'essentially the same' as the accused product or process in the first suit.").  Plaintiff also

16   cites to a single sentence of testimony in the Illinois Samsung Case:

17                  That shows that Samsung source of Android came from Google.
                    **And in order to make that work on a Samsung platform, the**
18                  **Samsung engineers had to make a lot of—they had to adapt that**
                    **software to their hardware platform.**
19

20   (Oppo. at 11 (quoting Transcript of Proceedings, July 15, 2015, p. 639) (emphasis supplied).)

21          In light of plaintiff's above-mentioned concessions and characterization of its theory, the

22   mere fact that potentially unrelated aspects of the Android operating system were modified to

23   ensure hardware compatibility does not preclude application of collateral estoppel in the instant

24   case.  There is no suggestion that the purportedly infringing component of Android—the Dalvik

25   Virtual Machine—was modified or that any such modifications were material to plaintiff's

26   infringement theory.  If there were any merit to the argument, presumably plaintiff could have

27   identified more than a single unspecific sentence of trial testimony (and a similar sentence of

28   deposition testimony) in support thereof.  For purposes of this motion, the Court thus finds that

8

collateral estoppel establishes non-infringement of each of the manufacturing defendants.

### B.   Antitrust Standing

Only those who possess antitrust standing by virtue of having suffered antitrust injury may bring a private action for damages for violation of the antitrust laws.  *See Glen Holly Entm't, Inc. v. Tektronix, Inc.*, 352 F.3d 367, 371 (9th Cir. 2003).  There are "four requirements for antitrust injury: (1) unlawful conduct, (2) causing an injury to the plaintiff, (3) that flows from that which makes the conduct unlawful, and (4) that is of the type the antitrust laws were intended to prevent."  *Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of California*, 190 F.3d 1051, 1055 (9th Cir. 1999).

Failure to license an invalid patent cannot serve as the basis for a cognizable antitrust injury.  *See Jones Knitting Corp. v. Morgan*, 244 F. Supp. 235, 239 (E.D. Pa. 1965), *overruled on other grounds*, 361 F.2d 451 (3d Cir. 1966).  Similarly, failure to license a non-infringed patent typically cannot serve as the basis for a cognizable antitrust injury.  *See Sony Elecs., Inc. v. Soundview Techs., Inc.*, 281 F. Supp. 2d 399, 402 (D. Conn. 2003) ("The conclusion that [certain manufacturers'] content blocking technology did not infringe [a patentee's] patent and [the patentee's] failure to present any evidence that any other television manufacturer uses different (and infringing) technology leads inexorably to the conclusion that 'a force other than the antitrust violation fully accounts for the [counterclaim] plaintiff's injury,' thus foreclosing a showing of antitrust injury.") (last alteration in original) (internal footnote and citation omitted).

Plaintiff argues against application of *Soundview*'s holding by asserting that a license to the '750 Patent may still have been valuable to the manufacturing defendants even if they were not yet practicing it.  Plaintiff contends defendants may have sought a license in order to practice the technology at issue in the future.  However, the FAC's allegations are premised entirely upon *ongoing* infringement and this last-ditch effort at an alternative theory does not comport with the FAC itself.  The Court will not credit it at this late juncture.  The Court finds that the logic of *Soundview* is applicable based on the allegations of the FAC and the application of collateral estoppel regarding non-infringement of the '750 Patent.  While the Court recognizes that an antitrust injury could plausibly be alleged based on a concerted refusal to license a patent that might be practiced in the future, the FAC simply does not include sufficient allegations to

plausibly support this newfound theory.

Alternatively, plaintiff contends that even in the absence of the '750 Patent, it suffered antitrust injury in connection with the other patents in the Elbrus portfolio.  According to the operative complaint, however, "the '750 patent is the primary Cascades/Elbrus patent presently of interest to the defendants."  (FAC ¶ 46.)  Plaintiff alleges that all of the other patents combined had essentially no licensing value to defendants, because a license to all 38 could have been obtained "effectively for the price of a license [solely] under the '750 patent."  (*Id*. ¶ 65.)  Thus, on the face of the complaint, any purported injury resulting from a failure to license the remaining patents would be admittedly *de minimis*.  Indeed, plaintiff's proposed market definition only includes the other 37 patents in the Elbrus portfolio "because of the requirements of RPX and the manufacturing defendants," revealing plaintiff itself had no substantial interest in licensing those patents to defendants.

Moreover, *only* Samsung is alleged to have infringed any of the other patents.  (*Id*. ¶ 46.) However, the complaint never specifies which other patent Samsung purportedly infringed.  Only in its opposition brief does plaintiff finally claim that Samsung purportedly infringed the '130 Patent.  As described above, the market power assertions are premised on a combination of the manufacturing defendants' shares.  Plaintiff does not contend that Samsung's share alone—17 percent of Android-based phones, a subset of a larger smartphone market and an even larger cellular phone market—is sufficient to undergird its theory.  It is also not plausible, in light of the application of the collateral estoppel doctrine regarding non-infringement, that plaintiff's failure to license the '130 Patent was an *antitrust* injury where *only* Samsung is alleged to have infringed the patent.  In such circumstances, the complaint does not provide a convincing motive for the other alleged participants to conspire against plaintiff or allege sufficient market power by Samsung individually.

Even if plaintiff could establish antitrust standing, the motion would be granted for plaintiff's failure to state any viable federal antitrust claim.  The Court previously articulated the elements of these federal antitrust claims in connection with its order denying defendants' motions to dismiss.  (Dkt. No. 119 at 9-29.)  After supplementing the picture with the patent jury's finding

United States District Court
Northern District of California

United States District Court
Northern District of California

of non-infringement of the "primary" '750 Patent, the FAC utterly fails to satisfy the elements necessary to state federal antitrust claims.  Indeed, if the complaint were amended to insert the word "non-infringed" before each of its more than seventy references to the '750 Patent, then the lack of plausibility would shine through acutely.

The Sherman Act Section 1 conspiracy is no longer plausibly alleged for the reasons noted above.  Many essential allegations relating to market power, for instance, refer *solely* to the market for the '750 Patent, and most allegations involving other patents in the portfolio are insufficiently detailed or wholly conclusory.  Furthermore, as to the Section 2 claims, Samsung's market share of 17 percent is insufficiently "dominant" and the FAC lacks sufficient allegations of a "dangerous probability" of Samsung achieving monopsony power.

The motion now before the Court, and therefore the foregoing analysis, addressed each of the four federal antitrust claims (Counts I-IV) in the FAC.  Thus, the motion is **GRANTED** as to those claims.

### C.    Resolution of State Law Claims and Stay of Discovery

The parties shall provide further briefing in connection with the remaining state law claims—Count V (for violation of the Cartwright Act, Cal. Bus. & Prof. Code §§ 16700 *et seq*.) and Count VI (for violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq*.).  The Court notes preliminarily that the asserted basis for jurisdiction over those claims is supplemental jurisdiction, which the Court is not inclined to maintain in the absence of any surviving federal claims.  The Court further notes that the parties previously suggested the state law claims were largely derivative of the federal claims in connection with briefing on the earlier motions to dismiss.  Each side shall file an opening brief of no more than seven (7) pages by **March 4, 2016**, and a reply of no more than five (5) pages by **March 11, 2016**.  Alternatively, the parties may stipulate to dismissal of the state law claims by March 4, 2016.  In the event that such a stipulation is granted, defendants shall file a proposed form of judgment, approved as to form by plaintiff, within five (5) business days thereafter.

In the interim, the Court **STAYS** discovery pending resolution of this issue and will resolve the pending discovery disputes (Dkt. Nos. 199-200) at a later date, if necessary.

**IV.    CONCLUSION**

For the foregoing reasons, the Court **GRANTS** defendants' motion for judgment on the pleadings.  Discovery is **STAYED** pending adjudication on the state law claims.

This Order terminates Docket Number 186.

**IT IS SO ORDERED.**

Dated: February 23, 2016

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**